**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Bianca Mirzaian, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Magic Spoon, Inc.,<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Bianca Mirzaian ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Magic Spoon, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of herself and all similarly situated consumers who purchased Magic Spoon cereals marketed as containing "0g Sugar" (collectively, the "Products").[1]

2. Defendant markets and advertises the Products as containing "0g TOTAL SUGARS PER SERVING," and uses comparison panels that present the Products as containing

[1] The Products include the following 7-ounce Magic Spoon cereal variants marketed as containing "0g Sugar" and listing allulose in their Sweetener Blend: Cocoa, Fruity, Cinnamon Crunch, Peanut Butter, Maple Waffle, Birthday Cake, Blueberry Muffin, Chocolate Chip Cookie, S'mores, Honey Nut, and Frosted. Plaintiff separately purchased the 14-ounce Fruity Product. The allegations also encompass materially identical configurations bearing the challenged representations.

"0g" of sugar while leading competing cereals contain between 9 and 16 grams of sugar per serving. However, unbeknownst to reasonable consumers, the Products contain sugar in the form of allulose. Allulose is a monosaccharide and therefore a sugar under the applicable federal and California labeling standards. It is not present in trace amounts: Defendant's labels quantify between 5 and 10 grams of allulose per labeled serving.

3. Defendant's labels disclose between 5 and 10 grams of allulose per labeled serving—10 to 20 times the 0.5-gram cutoff and far above the less-than-0.5-gram quantity that 21 C.F.R. § 101.9(c)(6)(ii) permits to be expressed as zero. Because the front- and comparison-panel statements appear outside the Nutrition Facts panel, they are nutrient-content claims under 21 C.F.R. § 101.13(c); as quantitative amount statements, they must satisfy § 101.13(i)(3) and may not be false or misleading, with compliance determined under § 101.13(o) using the methodology prescribed by § 101.9. The comparison panels additionally omit the percentage or fractional difference required by § 101.13(j).

4. Accordingly, Plaintiff brings claims against Defendant for violations of: (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq.; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.; (4) state consumer-protection statutes; (5) breach of express warranty; and (6) unjust enrichment.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because the proposed Classes include more than 100 members, the aggregate claims of the proposed Classes exceed $5,000,000, exclusive of interest and costs, and at least one member of the proposed Classes is a citizen of a state different from Defendant.

6. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in New York, New York and is therefore at home in this State.

7. Venue is proper in this District under 28 U.S.C. § 139 because Defendant resides in this District.

**PARTIES**

8. Plaintiff Bianca Mirzaian is a citizen of California residing in Glendale, California. Plaintiff Mirzaian purchased Defendant's Magic Spoon Fruity Cereal, 14 oz (the "Fruity Product"), for her personal use from a Costco warehouse located in Los Angeles, California, on multiple occasions. Her most recent purchase was on July 20, 2025, for $24.98. Prior to making her purchase, Plaintiff saw and relied on Defendant's prominent representation that the Fruity Product contained "0g TOTAL SUGARS PER SERVING." Plaintiff also saw and relied on the comparison chart on the back panel of the Fruity Product, which represents "0g" of sugar for the Fruity Product against "12g" for a leading fruit-flavored cereal brand. Based on these representations, Plaintiff reasonably believed that the Fruity Product contained no sugar, and 12 grams less than the referenced leading fruit-flavored cereal. These representations were part of the basis of Plaintiff's bargain, and she would not have purchased the Fruity Product on the same terms had she known they were untrue. Plaintiff also paid a price premium because of Defendant's false and misleading 0g-sugar claims but did not receive the benefit of her bargain. The Fruity Product was sweetened with 10 grams of allulose—a sugar—per 38-gram labeled serving, approximately 26.3% of the serving by weight. Had Plaintiff known the truth, she would not have purchased the Fruity Product or would have paid substantially less for it.

9. Plaintiff remains interested in purchasing high-protein breakfast cereals that truly contain no sugar. However, she cannot know for certain whether Defendant's false labeling and marketing have been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the Representations, Plaintiff will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Products' marketing is accurate. Plaintiff is an average consumer who is not sophisticated in

the chemistry, manufacturing, or formulation of food products. Neither Plaintiff nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

10. Defendant Magic Spoon, Inc. is a Delaware corporation with its principal place of business in New York, New York. Defendant markets, distributes, and sells the Products throughout California and the United States, including in this District.

## FACTUAL ALLEGATIONS

### A. Consumers Seek Out and Pay More for Products That Contain No Sugar

11. Consumer demand for products without sugar is well documented. A 2022 nationwide survey found that 73% of Americans ages 18 to 80 reported trying to limit or avoid sugars.[2]

12. That demand accords with widespread public-health guidance. The 2025–2030 Dietary Guidelines for Americans state that no amount of added sugars is recommended or considered part of a healthy or nutritious diet and that one meal should contain no more than 10 grams of added sugars. The World Health Organization recommends limiting free sugars to less than 10 percent of total daily energy intake and states that limiting them further to 5 percent or less may provide additional health benefits. The American Heart Association recommends limiting added sugars to no more than 6 percent of daily calories.[3]

13. Food and beverage manufacturers are acutely aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "sugar free" and "zero sugar"

[2] International Food Information Council, 2022 Food & Health Survey 57 (May 18, 2022), https://ific.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf.

[3] U.S. Department of Health and Human Services & U.S. Department of Agriculture, Dietary Guidelines for Americans, 2025–2030, at 5 (Jan. 2026), https://cdn.realfood.gov/DGA.pdf; World Health Organization, Healthy Diet (Jan. 26, 2026), https://www.who.int/news-room/fact-sheets/detail/healthy-diet; American Heart Association, Added Sugars (last reviewed Aug. 2, 2024), https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars.

command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

14. Defendant has capitalized on that demand. It markets cereals that contain gram-scale quantities of allulose, a sugar, while labeling and advertising them as containing "0g Sugar." Defendant thereby obtained an unfair competitive advantage over competitors whose no-sugar claims are true, at the expense of unwitting consumers.

**B. <u>Defendant's Representations and Warranties</u>**

15. Defendant prominently represents on the front panel of each Product's label that it contains "0g TOTAL SUGARS PER SERVING." The comparison panel on the back of each Product reinforces that message, stating that the Product contains "0g" of sugar while a leading competing cereal contains between 9 and 16 grams, depending on the label. Fruity and Maple Waffle use the header "SUGAR"; the other reviewed labels use "TOTAL SUGARS." These statements are referred to herein as the "Zero Sugar Representations."

16. The dagger accompanying the front-panel 0g TOTAL SUGARS PER SERVING directs consumers to a small-print statement: "†Not a low-calorie food. See nutrition facts for calorie and total sugar content. FDA does not consider allulose a total or added sugar for nutrition labeling." On other labels, the FDA statement states: "†Not a low-calorie food. See nutrition facts for calorie content. FDA does not consider allulose a total or added sugar for nutrition labeling." The same FDA statement is repeated adjacent to the net-carbohydrate calculation on the side panel. These statements are referred to herein as the "FDA Representations." The Zero Sugar Representations and the FDA Representations are referred to collectively as the "Representations."

17. Below is an illustrative sampling of the Products and the Representations:

LABEL CAPTURE

# Magic Spoon 7-ounce cereals - 0g sugar representations and allulose disclosures

Each sheet reproduces representative images of one flavor variant: the **front panel** , the **comparison panel** , and the **Nutrition Facts** / **allulose panel** . The relevant label copy is marked in place. The images have been cropped only to improve fit and remove surrounding whitespace or unrelated material; label content has not been rewritten or retouched.

**Marking key.** A **red rectangle** encloses only the front-panel 0g Total Sugars claim and the complete US / THEM comparison table. A **blue rectangle** encloses only the Nutrition Facts Total Sugars and Includes Added Sugars rows. **Purple rectangles** enclose the complete front-panel disclaimer, net-carbohydrate calculation, FDA footnote, and Our Magic paragraph. The flavor-specific front-panel disclaimer is transcribed verbatim below each product.

FLAVOR VARIANTS CAPTURED

| | FLAVOR | SERVING SIZE | TOTAL SUGARS | ALLULOSE / SERVING | US / THEM SUGAR COMPARISON | SHEET |
|---|---|---|---|---|---|---|
| 01 | **Cocoa** | 1 Cup (37g) | 0g | 9g | 0g total sugars / 9g total sugars | Sheet 1 |
| 02 | **Fruity** | About 1 Cup (38g) | 0g | 10g | 0g sugar / 12g sugar | Sheet 2 |
| 03 | **Cinnamon Crunch** | 1 Cup (37g) | 0g | 10g | 0g total sugars / 12g total sugars | Sheet 3 |
| 04 | **Peanut Butter** | 1 Cup (36g) | 0g | 5g | 0g total sugars / 9g total sugars | Sheet 4 |
| 05 | **Maple Waffle** | About 1 Cup (38g) | 0g | 9g | 0g sugar / 15g sugar | Sheet 5 |
| 06 | **Birthday Cake** | 1 Cup (38g) | 0g | 9g | 0g total sugars / 9g total sugars | Sheet 6 |
| 07 | **Blueberry Muffin** | 1 Cup (38g) | 0g | 9g | 0g total sugars / 11g total sugars | Sheet 7 |
| 08 | **Chocolate Chip Cookie** | 1 Cup (37g) | 0g | 8g | 0g total sugars / 12g total sugars | Sheet 8 |
| 09 | **S'mores** | 1 Cup (38g) | 0g | 8g | 0g total sugars / 16g total sugars | Sheet 9 |
| 10 | **Honey Nut** | 1 Cup (37g) | 0g | 9g | 0g total sugars / 12g total sugars | Sheet 10 |
| 11 | **Frosted** | 1 Cup (37g) | 0g | 9g | 0g total sugars / 12g total sugars | Sheet 11 |

RECURRING LABEL COPY

Every listed variant prominently represents **0g Total Sugars** on the front panel, declares **Total Sugars 0g** and **Includes 0g Added Sugars** in the Nutrition Facts panel, identifies allulose in its **Sweetener Blend** , quantifies allulose in a net-carbohydrate calculation, and states that FDA does not consider allulose a total or added sugar for nutrition labeling. Each comparison panel also contrasts the product's 0g sugar figure with a higher sugar figure for a leading flavored cereal brand.

**MAGIC SPOON - LABEL CLAIMS AND ALLULOSE DISCLOSURE**

0g sugar representations | Nutrition Facts sugars rows | Allulose disclosures

REPRESENTATIVE IMAGES CAPTURED BY COUNSEL IN AUGUST 2026

## 01 Cocoa

MAGIC SPOON PROTEIN CEREAL - 7 OZ

FRONT PANEL




COMPARISON PANEL




NUTRITION FACTS / ALLULOSE PANEL




### FRONT-PANEL REPRESENTATION

**0g TOTAL SUGARS PER SERVING**

### COMPARISON PANEL - TOTAL SUGARS

US: 13g protein / 4g net carbs / 0g total sugars
THEM: 1g protein / 22g net carbs / 9g total sugars

*Per 37g serving. **Per 27g serving of leading cocoa flavored cereal brand. ***Based on manufacturer's representations.

### NUTRITION FACTS TRANSCRIPTION

| | |
|---|---|
| **Serving size** | 1 Cup (37g) |
| **Calories** | 140 |
| **Total Carbohydrate** | 15g |
| **Dietary Fiber** | 2g |
| **Total Sugars** | 0g |
| **Includes Added Sugars** | 0g - 0% |
| **Protein** | 13g |

### ALLULOSE DISCLOSURE TRANSCRIPTION

**Ingredients:** Milk Protein Blend (Casein, Whey Protein Concentrate), **Sweetener Blend (Allulose, Monk Fruit Extract)**, Oil Blend (High Oleic Sunflower Oil, Avocado Oil), Tapioca Starch, Cocoa Powder, Inulin (from Chicory Root and/or Agave), Natural Flavor, Salt. Adds a trivial amount of sugar.

NET CARBS PER SERVING
15g CARBS - 2g FIBER - **9g ALLULOSE** = 4g NET CARBS

**FDA does not consider allulose a total or added sugar for nutrition labeling.**

**Our Magic:** Allulose is a special type of sugar that contains only 10% of the calories of regular sugar and is only slightly metabolized by your body. This means it barely impacts blood sugar levels-all while having the same familiar taste and texture as regular sugar. Monk Fruit is native to Southeast Asia and was first cultivated by Buddhist monks in the 13th century.

### FRONT-LABEL ALLULOSE DISCLOSURE TRANSCRIPTION

**†Not a low-calorie food. See nutrition facts for calorie and total sugar content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

**MAGIC SPOON - LABEL CLAIMS AND ALLULOSE DISCLOSURE**

0g sugar representations | Nutrition Facts sugars rows | Allulose disclosures

REPRESENTATIVE IMAGES CAPTURED BY COUNSEL IN AUGUST 2026

## 02 Fruity

MAGIC SPOON GRAIN-FREE CEREAL - 7 OZ

FRONT PANEL




COMPARISON PANEL




NUTRITION FACTS / ALLULOSE PANEL




FRONT-PANEL REPRESENTATION

**0g TOTAL SUGARS PER SERVING**

COMPARISON PANEL - SUGAR

US: 13g protein / 4g net carbs / 0g sugar
THEM: 2g protein / 32g net carbs / 12g sugar

*Per 38g serving. **Per 39g serving of leading fruity flavored cereal brand. ***Based on manufacturer's representations.

NUTRITION FACTS TRANSCRIPTION

| | |
|---|---|
| **Serving size** | About 1 Cup (38g) |
| **Calories** | 150 |
| **Total Carbohydrate** | 15g |
| **Dietary Fiber** | 1g |
| **Total Sugars** | 0g |
| **Includes Added Sugars** | 0g - 0% |
| **Protein** | 13g |

ALLULOSE DISCLOSURE TRANSCRIPTION

**Ingredients:** Milk Protein Blend (Casein, Whey Protein Concentrate), **Sweetener Blend (Allulose, Monk Fruit Extract)** , Oil Blend (High Oleic Sunflower Oil, Avocado Oil), Tapioca Starch, Inulin (from Chicory Root and/or Agave), Natural Flavor, Salt, Turmeric Extract, Spirulina Extract, Vegetable Juice (for color). Adds a trivial amount of sugar.

NET CARBS PER SERVING
15g CARBS - 1g FIBER - **10g ALLULOSE** = 4g NET CARBS

**See nutrition facts for information on net carb content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

**Our Magic:** Allulose is a rare sugar found in raisins, figs, and maple syrup. It contains only 10% of the calories of regular sugar and is only slightly metabolized by your body, so it barely impacts blood sugar levels-all while having the same familiar taste and texture as regular sugar. Monk Fruit is native to Southeast Asia and was first cultivated by Buddhist monks in the 13th century.

FRONT-LABEL ALLULOSE DISCLOSURE TRANSCRIPTION

**†Not a low-calorie food. See nutrition facts for calorie and total sugar content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

**MAGIC SPOON - LABEL CLAIMS AND ALLULOSE DISCLOSURE**

0g sugar representations | Nutrition Facts sugars rows | Allulose disclosures

REPRESENTATIVE IMAGES CAPTURED BY COUNSEL IN AUGUST 2026

## 03 Cinnamon Crunch

MAGIC SPOON PROTEIN CEREAL - 7 OZ

FRONT PANEL




COMPARISON PANEL




NUTRITION FACTS / ALLULOSE PANEL




FRONT-PANEL REPRESENTATION

# 0g TOTAL SUGARS PER SERVING

COMPARISON PANEL - TOTAL SUGARS

US: 12g protein / 4g net carbs / 0g total sugars
THEM: 2g protein / 30g net carbs / 12g total sugars

*Per 37g serving. **Per 41g serving of leading cinnamon flavored cereal brand. ***Based on manufacturer's representations.

NUTRITION FACTS TRANSCRIPTION

| | |
|---|---|
| **Serving size** | 1 Cup (37g) |
| **Calories** | 140 |
| **Total Carbohydrate** | 15g |
| **Dietary Fiber** | 1g |
| **Total Sugars** | 0g |
| **Includes Added Sugars** | 0g - 0% |
| **Protein** | 12g |

ALLULOSE DISCLOSURE TRANSCRIPTION

**Ingredients:** Milk Protein Blend (Casein, Whey Protein Concentrate), **Sweetener Blend (Allulose, Monk Fruit Extract)** , Oil Blend (High Oleic Sunflower Oil, Avocado Oil), Tapioca Starch, Natural Flavor, Inulin (from Chicory Root and/or Agave), Cinnamon, Salt. Adds a trivial amount of sugar.

NET CARBS PER SERVING
15g CARBS - 1g FIBER - **10g ALLULOSE** = 4g NET CARBS

**FDA does not consider allulose a total or added sugar for nutrition labeling.**

**Our Magic:** Allulose is a special type of sugar that contains only 10% of the calories of regular sugar and is only slightly metabolized by your body. This means it barely impacts blood sugar levels-all while having the same familiar taste and texture as regular sugar. Monk Fruit is native to Southeast Asia and was first cultivated by Buddhist monks in the 13th century.

FRONT-LABEL ALLULOSE DISCLOSURE TRANSCRIPTION

**†Not a low-calorie food. See nutrition facts for calorie content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

**MAGIC SPOON - LABEL CLAIMS AND ALLULOSE DISCLOSURE**

0g sugar representations | Nutrition Facts sugars rows | Allulose disclosures

REPRESENTATIVE IMAGES CAPTURED BY COUNSEL IN AUGUST 2026

## 04 Peanut Butter

MAGIC SPOON PROTEIN CEREAL - 7 OZ

FRONT PANEL




COMPARISON PANEL




NUTRITION FACTS / ALLULOSE PANEL




FRONT-PANEL REPRESENTATION

**0g TOTAL SUGARS PER SERVING**

COMPARISON PANEL - TOTAL SUGARS

US: 14g protein / 4g net carbs / 0g total sugars
THEM: 2g protein / 21g net carbs / 9g total sugars

*Per 36g serving. **Per 29g serving of leading peanut butter flavored cereal brand. ***Based on manufacturer's representations.

NUTRITION FACTS TRANSCRIPTION

| | |
|---|---|
| **Serving size** | 1 Cup (36g) |
| **Calories** | 170 |
| **Total Carbohydrate** | 10g |
| **Dietary Fiber** | 1g |
| **Total Sugars** | 0g |
| **Includes Added Sugars** | 0g - 0% |
| **Protein** | 14g |

ALLULOSE DISCLOSURE TRANSCRIPTION

**Ingredients:** Milk Protein Blend (Casein, Whey Protein Concentrate), **Sweetener Blend (Allulose, Monk Fruit Extract)**, Oil Blend (High Oleic Sunflower Oil, Avocado Oil), Tapioca Starch, Peanut Oil, Inulin (from Chicory Root and/or Agave), Peanut Flour, Peanut Extract, Natural Flavors, Salt. Adds a trivial amount of sugar.

NET CARBS PER SERVING
10g CARBS - 1g FIBER - **5g ALLULOSE** = 4g NET CARBS

**FDA does not consider allulose a total or added sugar for nutrition labeling.**

**Our Magic:** Allulose is a special type of sugar that contains only 10% of the calories of regular sugar and is only slightly metabolized by your body. This means it barely impacts blood sugar levels-all while having the same familiar taste and texture as regular sugar. Monk Fruit is native to Southeast Asia and was first cultivated by Buddhist monks in the 13th century.

FRONT-LABEL ALLULOSE DISCLOSURE TRANSCRIPTION

**†Not a low-calorie food. See nutrition facts for calorie content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

**MAGIC SPOON - LABEL CLAIMS AND ALLULOSE DISCLOSURE**

0g sugar representations | Nutrition Facts sugars rows | Allulose disclosures

REPRESENTATIVE IMAGES CAPTURED BY COUNSEL IN AUGUST 2026

## 05 Maple Waffle

MAGIC SPOON GRAIN-FREE CEREAL - 7 OZ

FRONT PANEL




COMPARISON PANEL




NUTRITION FACTS / ALLULOSE PANEL




FRONT-PANEL REPRESENTATION

**0g TOTAL SUGARS PER SERVING**

COMPARISON PANEL - SUGAR

US: 12g protein / 4g net carbs / 0g sugar
THEM: 2g protein / 33g net carbs / 15g sugar

*Per 38g serving. **Per 40g serving of leading waffle flavored cereal brand.

NUTRITION FACTS TRANSCRIPTION

| | |
|---|---|
| **Serving size** | About 1 Cup (38g) |
| **Calories** | 150 |
| **Total Carbohydrate** | 14g |
| **Dietary Fiber** | 1g |
| **Total Sugars** | 0g |
| **Includes Added Sugars** | 0g - 0% |
| **Protein** | 12g |

ALLULOSE DISCLOSURE TRANSCRIPTION

**Ingredients:** Milk Protein Blend (Casein, Whey Protein Concentrate), **Sweetener Blend (Allulose, Monk Fruit Extract)**, Oil Blend (High Oleic Sunflower Oil, Avocado Oil), Tapioca Starch, Inulin (from Chicory Root and/or Agave), Natural Flavors, Fruit and Vegetable Juices (for color), Salt. Adds a trivial amount of sugar.

NET CARBS PER SERVING
14g CARBS - 1g FIBER - **9g ALLULOSE** = 4g NET CARBS

**See nutrition facts for information on net carb content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

**Our Magic:** Allulose is a rare sugar found in raisins, figs, and maple syrup. It contains only 10% of the calories of regular sugar and is only slightly metabolized by your body, so it barely impacts blood sugar levels-all while having the same familiar taste and texture as regular sugar. Monk Fruit is native to Southeast Asia and was first cultivated by Buddhist monks in the 13th century.

FRONT-LABEL ALLULOSE DISCLOSURE TRANSCRIPTION

**†Not a low-calorie food. See nutrition facts for calorie and total sugar content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

## 06 Birthday Cake

MAGIC SPOON PROTEIN CEREAL - 7 OZ

FRONT PANEL




COMPARISON PANEL




NUTRITION FACTS / ALLULOSE PANEL




FRONT-PANEL REPRESENTATION

# 0g TOTAL SUGARS PER SERVING

COMPARISON PANEL - TOTAL SUGARS

US: 13g protein / 5g net carbs / 0g total sugars
THEM: 1g protein / 21g net carbs / 9g total sugars

*Per 38g serving. **Per 26g serving of leading birthday cake flavored cereal brand. ***Based on manufacturer's representations.

NUTRITION FACTS TRANSCRIPTION

| | |
|---|---|
| **Serving size** | 1 Cup (38g) |
| **Calories** | 140 |
| **Total Carbohydrate** | 15g |
| **Dietary Fiber** | 1g |
| **Total Sugars** | 0g |
| **Includes Added Sugars** | 0g - 0% |
| **Protein** | 13g |

ALLULOSE DISCLOSURE TRANSCRIPTION

**Ingredients:** Milk Protein Blend (Casein, Whey Protein Concentrate), **Sweetener Blend (Allulose, Monk Fruit Extract)**, Oil Blend (High Oleic Sunflower Oil, Avocado Oil), Tapioca Starch, Inulin (from Chicory Root and/or Agave), Natural Flavor, Salt, Edible Glitter (Gum Arabic), Spirulina Extract, Radish Extract, Turmeric Extract. Adds a trivial amount of sugar.

NET CARBS PER SERVING
15g CARBS - 1g FIBER - **9g ALLULOSE** = 5g NET CARBS

**See nutrition facts for information on net carb content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

**Our Magic:** Allulose is a special type of sugar that contains only 10% of the calories of regular sugar and is only slightly metabolized by your body. This means it barely impacts blood sugar levels-all while having the same familiar taste and texture as regular sugar. Monk Fruit is native to Southeast Asia and was first cultivated by Buddhist monks in the 13th century.

FRONT-LABEL ALLULOSE DISCLOSURE TRANSCRIPTION

**†Not a low-calorie food. See nutrition facts for calorie content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

**MAGIC SPOON - LABEL CLAIMS AND ALLULOSE DISCLOSURE**

0g sugar representations | Nutrition Facts sugars rows | Allulose disclosures

REPRESENTATIVE IMAGES CAPTURED BY COUNSEL IN AUGUST 2026

## 07 Blueberry Muffin

MAGIC SPOON PROTEIN CEREAL - 7 OZ

FRONT PANEL




COMPARISON PANEL




NUTRITION FACTS / ALLULOSE PANEL




FRONT-PANEL REPRESENTATION

**0g TOTAL SUGARS PER SERVING**

COMPARISON PANEL - TOTAL SUGARS

US: 13g protein / 5g net carbs / 0g total sugars
THEM: 2g protein / 33g net carbs / 11g total sugars

*Per 38g serving. **Per 41g serving of leading blueberry flavored cereal brand. ***Based on manufacturer's representations.

NUTRITION FACTS TRANSCRIPTION

| | |
|---|---|
| **Serving size** | 1 Cup (38g) |
| **Calories** | 150 |
| **Total Carbohydrate** | 15g |
| **Dietary Fiber** | 1g |
| **Total Sugars** | 0g |
| **Includes Added Sugars** | 0g - 0% |
| **Protein** | 13g |

ALLULOSE DISCLOSURE TRANSCRIPTION

**Ingredients:** Milk Protein Blend (Casein, Whey Protein Concentrate), **Sweetener Blend (Allulose, Monk Fruit Extract)**, Oil Blend (High Oleic Sunflower Oil, Avocado Oil), Tapioca Starch, Inulin (from Chicory Root and/or Agave), Natural Flavor, Blueberry, Fruit and Vegetable Juice (for color), Salt. Adds a trivial amount of sugar.

NET CARBS PER SERVING
15g CARBS - 1g FIBER - **9g ALLULOSE** = 5g NET CARBS

**FDA does not consider allulose a total or added sugar for nutrition labeling.**

**Our Magic:** Allulose is a special type of sugar that contains only 10% of the calories of regular sugar and is only slightly metabolized by your body. This means it barely impacts blood sugar levels-all while having the same familiar taste and texture as regular sugar. Monk Fruit is native to Southeast Asia and was first cultivated by Buddhist monks in the 13th century.

FRONT-LABEL ALLULOSE DISCLOSURE TRANSCRIPTION

**†Not a low-calorie food. See nutrition facts for calorie and total sugar content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

**MAGIC SPOON - LABEL CLAIMS AND ALLULOSE DISCLOSURE**

0g sugar representations | Nutrition Facts sugars rows | Allulose disclosures

REPRESENTATIVE IMAGES CAPTURED BY COUNSEL IN AUGUST 2026

## 08 Chocolate Chip Cookie

MAGIC SPOON PROTEIN CEREAL - 7 OZ

FRONT PANEL




COMPARISON PANEL




NUTRITION FACTS / ALLULOSE PANEL




**FRONT-PANEL REPRESENTATION**

# 0g TOTAL SUGARS PER SERVING

**COMPARISON PANEL - TOTAL SUGARS**

US: 13g protein / 5g net carbs / 0g total sugars
THEM: 2g protein / 29g net carbs / 12g total sugars

*Per 37g serving. **Per 36g serving of leading chocolate chip cookie flavored cereal brand. ***Based on manufacturer's representations.

**NUTRITION FACTS TRANSCRIPTION**

| | |
|---|---|
| Serving size | 1 Cup (37g) |
| Calories | 140 |
| Total Carbohydrate | 14g |
| Dietary Fiber | 1g |
| Total Sugars | 0g |
| Includes Added Sugars | 0g - 0% |
| Protein | 13g |

**ALLULOSE DISCLOSURE TRANSCRIPTION**

**Ingredients:** Milk Protein Blend (Casein, Whey Protein Concentrate), **Sweetener Blend (Allulose, Monk Fruit Extract)**, Oil Blend (High Oleic Sunflower Oil, Avocado Oil), Tapioca Starch, Natural Flavor, Inulin (from Chicory Root and/or Agave), Cocoa Powder, Salt, Edible Glitter (Sodium Alginate, Agar-Agar, Calcium Carbonate). Adds a trivial amount of sugar.

NET CARBS PER SERVING
14g CARBS - 1g FIBER - **8g ALLULOSE** = 5g NET CARBS

**See nutrition facts for information on net carb content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

**Our Magic:** Allulose is a special type of sugar that contains only 10% of the calories of regular sugar and is only slightly metabolized by your body. This means it barely impacts blood sugar levels-all while having the same familiar taste and texture as regular sugar. Monk Fruit is native to Southeast Asia and was first cultivated by Buddhist monks in the 13th century.

**FRONT-LABEL ALLULOSE DISCLOSURE TRANSCRIPTION**

**†Not a low-calorie food. See nutrition facts for calorie content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

**MAGIC SPOON - LABEL CLAIMS AND ALLULOSE DISCLOSURE**

0g sugar representations | Nutrition Facts sugars rows | Allulose disclosures

REPRESENTATIVE IMAGES CAPTURED BY COUNSEL IN AUGUST 2026

## 09 S'mores

MAGIC SPOON PROTEIN CEREAL - 7 OZ

FRONT PANEL




COMPARISON PANEL




NUTRITION FACTS / ALLULOSE PANEL




**FRONT-PANEL REPRESENTATION**

# 0g TOTAL SUGARS PER SERVING

**COMPARISON PANEL - TOTAL SUGARS**

US: 14g protein / 5g net carbs / 0g total sugars
THEM: 3g protein / 30g net carbs / 16g total sugars

*Per 38g serving. **Leading S'mores-flavored cereal brand. ***Based on manufacturer's representations.

**NUTRITION FACTS TRANSCRIPTION**

| | |
|---|---|
| **Serving size** | 1 Cup (38g) |
| **Calories** | 150 |
| **Total Carbohydrate** | 14g |
| **Dietary Fiber** | 1g |
| **Total Sugars** | 0g |
| **Includes Added Sugars** | 0g - 0% |
| **Protein** | 14g |

**ALLULOSE DISCLOSURE TRANSCRIPTION**

**Ingredients:** Milk Protein Blend (Casein, Whey Protein Concentrate), **Sweetener Blend (Allulose, Monk Fruit Extract)**, Oil Blend (High Oleic Sunflower Oil, Avocado Oil), Tapioca Starch, Inulin (from Chicory Root and/or Agave), Cocoa Powder (Processed with Alkali), Natural Flavor, Fruit and Vegetable Juice (for Color), Salt. Adds a trivial amount of sugar.

NET CARBS PER SERVING
14g CARBS - 1g FIBER - **8g ALLULOSE** = 5g NET CARBS

**See nutrition facts for information on net carb content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

**Our Magic:** Allulose is a special type of sugar that contains only 10% of the calories of regular sugar and is only slightly metabolized by your body. This means it barely impacts blood sugar levels—all while having the same familiar taste and texture as regular sugar. Monk Fruit is native to Southeast Asia and was first cultivated by Buddhist monks in the 13th century.

**FRONT-LABEL ALLULOSE DISCLOSURE TRANSCRIPTION**

**†Not a low-calorie food. See nutrition facts for calorie and total sugar content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

**MAGIC SPOON - LABEL CLAIMS AND ALLULOSE DISCLOSURE**

0g sugar representations | Nutrition Facts sugars rows | Allulose disclosures

REPRESENTATIVE IMAGES CAPTURED BY COUNSEL IN AUGUST 2026

## 10 Honey Nut

MAGIC SPOON PROTEIN CEREAL - 7 OZ

FRONT PANEL




COMPARISON PANEL




NUTRITION FACTS / ALLULOSE PANEL




FRONT-PANEL REPRESENTATION

**0g TOTAL SUGARS PER SERVING**

COMPARISON PANEL - TOTAL SUGARS

US: 13g protein / 4g net carbs / 0g total sugars
THEM: 3g protein / 27g net carbs / 12g total sugars

*Per 37g serving. **Per 37g serving of leading honey nut flavored cereal brand. ***Based on manufacturer's representations.

NUTRITION FACTS TRANSCRIPTION

| | |
|---|---|
| **Serving size** | 1 Cup (37g) |
| **Calories** | 140 |
| **Total Carbohydrate** | 14g |
| **Dietary Fiber** | 1g |
| **Total Sugars** | 0g |
| **Includes Added Sugars** | 0g - 0% |
| **Protein** | 13g |

ALLULOSE DISCLOSURE TRANSCRIPTION

**Ingredients:** Milk Protein Blend (Casein, Whey Protein Concentrate), **Sweetener Blend (Allulose, Monk Fruit Extract)** , Oil Blend (High Oleic Sunflower Oil, Avocado Oil), Tapioca Starch, Inulin (from Chicory Root and/or Agave), Natural Flavor, Honey, Salt. Adds a trivial amount of sugar.

NET CARBS PER SERVING
14g CARBS - 1g FIBER - **9g ALLULOSE** = 4g NET CARBS

**FDA does not consider allulose a total or added sugar for nutrition labeling.**

**Our Magic:** Allulose is a special type of sugar that contains only 10% of the calories of regular sugar and is only slightly metabolized by your body. This means it barely impacts blood sugar levels—all while having the same familiar taste and texture as regular sugar. Monk Fruit is native to Southeast Asia and was first cultivated by Buddhist monks in the 13th century.

FRONT-LABEL ALLULOSE DISCLOSURE TRANSCRIPTION

**†Not a low-calorie food. See nutrition facts for calorie and total sugar content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

**MAGIC SPOON - LABEL CLAIMS AND ALLULOSE DISCLOSURE**

0g sugar representations | Nutrition Facts sugars rows | Allulose disclosures

REPRESENTATIVE IMAGES CAPTURED BY COUNSEL IN AUGUST 2026

## 11 Frosted

MAGIC SPOON PROTEIN CEREAL - 7 OZ

FRONT PANEL




COMPARISON PANEL




NUTRITION FACTS / ALLULOSE PANEL




FRONT-PANEL REPRESENTATION

**0g TOTAL SUGARS PER SERVING**

COMPARISON PANEL - TOTAL SUGARS

US: 13g protein / 4g net carbs / 0g total sugars
THEM: 2g protein / 32g net carbs / 12g total sugars

*Per 37g serving. **Per 37g serving of leading frosted flavored cereal brand. ***Based on manufacturer's representations.

NUTRITION FACTS TRANSCRIPTION

| | |
|---|---|
| **Serving size** | 1 Cup (37g) |
| **Calories** | 140 |
| **Total Carbohydrate** | 14g |
| **Dietary Fiber** | 1g |
| **Total Sugars** | 0g |
| **Includes Added Sugars** | 0g - 0% |
| **Protein** | 13g |

ALLULOSE DISCLOSURE TRANSCRIPTION

**Ingredients:** Milk Protein Blend (Casein, Whey Protein Concentrate), **Sweetener Blend (Allulose, Monk Fruit Extract)** , Oil Blend (High Oleic Sunflower Oil, Avocado Oil), Tapioca Starch, Inulin (from Chicory Root and/or Agave), Natural Flavor, Salt. Adds a trivial amount of sugar.

NET CARBS PER SERVING
14g CARBS - 1g FIBER - **9g ALLULOSE** = 4g NET CARBS

**FDA does not consider allulose a total or added sugar for nutrition labeling.**

**Our Magic:** Allulose is a special type of sugar that contains only 10% of the calories of regular sugar and is only slightly metabolized by your body. This means it barely impacts blood sugar levels—all while having the same familiar taste and texture as regular sugar. Monk Fruit is native to Southeast Asia and was first cultivated by Buddhist monks in the 13th century.

FRONT-LABEL ALLULOSE DISCLOSURE TRANSCRIPTION

**†Not a low-calorie food. See nutrition facts for calorie and total sugar content. FDA does not consider allulose a total or added sugar for nutrition labeling.**

18. The Zero Sugar Representations communicate to reasonable consumers that the Products contain no sugar. That is the plain and ordinary meaning of "0g TOTAL SUGARS PER SERVING" and "0g Sugar." The FDA Representations similarly communicate that FDA categorically excludes allulose from Total and Added Sugars for labeling purposes, including the Products' outside-panel claims.

19. The Representations are absolute, objective, and quantitative claims concerning the sugar levels of the Products. Defendant's labels disclose that the Products contain between 5 and 10 grams of allulose, a sugar, per labeled serving. The FDA Representations and Allulose Representations reinforce, rather than cure, the materially misleading impression created by the Zero Sugar Representations.

## C. <u>**Allulose Is a Sugar**</u>

20. Allulose is a sugar.

21. Chemically, allulose is a monosaccharide. It is the C-3 epimer of D-fructose, meaning that allulose and fructose have the same molecular formula and connectivity but differ in the spatial orientation of a hydroxyl group at the third carbon. "D-allulose, a C-3 epimer of D-fructose, is a rare monosaccharide used as a food ingredient or a sweetener."[4] Allulose is accordingly "a rare sugar," and "a monosaccharide that is low in calories and that maintains approximately 70% of sweetness relative to sugar."[5]

22. Allulose is not merely a sugar as a matter of chemical classification. It is used as one. Allulose has "70% of the sweetness of sucrose, which means it is viewed as a potential alternative sweetener."[6] The food science literature describes allulose and other rare sugars as

---

[4] Han-Joo Maeng et al., Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol, 8 Foods art. 448, at 1 (2019), https://doi.org/10.3390/foods8100448.
[5] Youngji Han et al., Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial, 10 Nutrients art. 2010, at 1–2 (2018), https://doi.org/10.3390/nu10122010.
[6] Maeng et al., supra note 4, at 2.

"monosaccharides with sweetness similar to those as caloric sugars, but [with] low caloric values," which "are now widely used as sugar substitutes."[7]

23. Because allulose is less sweet than table sugar, it is used in gram-scale quantities as a bulk sweetener. High-intensity sweeteners such as saccharin, aspartame, acesulfame potassium, neotame, sucralose, and advantame are approximately 200 to 20,000 times as sweet as sucrose. By contrast, allulose has approximately 70% of sucrose's sweetness and, as the Products' own labels show, is used in large quantities as a bulk sweetener. The Products use between 5 and 10 grams of allulose per labeled serving. Plaintiff's Fruity Product contains 10 grams in a 38-gram labeled serving—approximately 26.3% of the serving by weight.[8][9]

24. Allulose also behaves like sugar in food. "It is convenient for the food industry to use D-allulose, as its chemical properties are similar to those of fructose in terms of solubility, water activity, and viscosity."[10] It is used as "a partial replacement of added sugars."[11] Allulose is "widely regarded as a promising substitute for sucrose"—that is, a substitute for table sugar, and one that is itself a sugar.[12]

25. In the Products, allulose is the first-listed component of the "Sweetener Blend," ahead of monk fruit extract, and the side panels quantify between 5 and 10 grams of allulose per labeled serving. Those amounts are approximately 13.9% to 27.0% of the 36- to 38-gram labeled servings. Table 2 to 21 C.F.R. § 101.12(b) assigns a 40-gram reference amount customarily consumed ("RACC") to ready-to-eat cereal weighing 20 grams or more but less than 43 grams per

[7] Maeng et al., supra note 4, at 9–10.
[8] U.S. Food & Drug Administration, Aspartame and Other Sweeteners in Food, https://www.fda.gov/food/food-additives-petitions/aspartame-and-other-sweeteners-food (last visited Aug. 18, 2026).
[9] Mengting Tao, Wenli Zhang & Wanmeng Mu, D-Allulose: A New Generation of Potential Bulk Sweeteners in the Food Industry, 73 J. Agric. & Food Chem. 27,833, 27,833–35 (2025) (Viewpoint), https://doi.org/10.1021/acs.jafc.5c13620.
[10] Han et al., supra note 5, at 10.
[11] *Id.*
[12] Wenli Zhang et al., D-Allulose, a Versatile Rare Sugar: Recent Biotechnological Advances and Challenges, 63 Critical Revs. Food Sci. & Nutrition 5661, 5661 (2023) (published online Dec. 29, 2021), https://doi.org/10.1080/10408398.2021.2023091.

cup. Proportionally scaling the labels' rounded values to that 40-gram RACC yields approximately 5.56 to 10.81 grams of allulose per RACC; for Fruity, the result is approximately 10.53 grams. These figures are calculations from Defendant's label-stated, rounded values, not laboratory measurements.

26. The Food and Drug Administration ("FDA") identifies allulose as a sugar. In its 2016 Nutrition Facts rulemaking, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[13] The current regulation continues to define Total Sugars as "the sum of all free mono- and disaccharides" and does not exclude allulose. 21 C.F.R. § 101.9(c)(6)(ii).

27. The Calorie Control Council likewise describes allulose under the heading "Allulose is a Naturally Occurring Sugar" and states that "[a] monosaccharide, or simple sugar, allulose is absorbed by the body, but not metabolized, so it is nearly calorie-free."[14] Defendant itself recognizes this by stating on the side panel, depending on the label, that allulose is "a special type of sugar" or "a rare sugar found in raisins, figs, and maple syrup," and that it has "the same familiar taste and texture as regular sugar." Yet Defendant simultaneously states that "FDA does not consider allulose a total or added sugar for nutrition labeling" and touts the Products as containing "0g TOTAL SUGARS PER SERVING." FDA's binding regulation continues to classify Total Sugars by chemical structure and contains no allulose exception. FDA's nonbinding guidance instead announces a limited enforcement-discretion policy, pending rulemaking, for amounts declared on Nutrition and Supplement Facts panels. Defendant's unqualified statement is therefore materially misleading in the context of the outside-panel zero and comparison claims because it converts that limited enforcement posture into a categorical FDA classification.

---

[13] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,796 (May 27, 2016).
[14] Calorie Control Council, Allulose, https://caloriecontrol.org/ingredients/sweeteners/allulose/ (last visited Aug. 11, 2026).

**D. <u>The Products Violate the FDA Nutrient Content Regulations</u>**

28. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

29. Section 101.9(c)(6)(ii) requires a Total Sugars declaration here and defines Total Sugars as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." It permits Total Sugars to be expressed as zero only when a serving contains less than 0.5 gram of sugars. Allulose is a free monosaccharide, and the binding regulation contains no allulose exception.

30. FDA regulations distinguish information appearing within the Nutrition Facts panel from statements appearing elsewhere on a label. Information within the Nutrition Facts panel is not itself a nutrient-content claim, but the same information placed outside that panel is subject to the nutrient-content-claim regulations. 21 C.F.R. § 101.13(c). Defendant's front-panel "0g TOTAL SUGARS PER SERVING" statement appears outside the Nutrition Facts panel and is a quantitative statement of nutrient amount governed by § 101.13(i)(3), which permits such a statement only if it is not false or misleading. FDA itself identifies "0 g total sugars" as an amount statement described by § 101.13(i)(3). See U.S. Food & Drug Administration, Industry Resources on the Changes to the Nutrition Facts Label, https://www.fda.gov/food/nutrition-food-labeling-and-critical-foods/industry-resources-changes-nutrition-facts-label. Under § 101.13(o), compliance is determined using the analytical methodology prescribed by § 101.9, including the applicable compliance provisions in § 101.9(g).

31. The permissibility of a declaration inside the Nutrition Facts panel does not determine whether the same numerical statement is false or misleading when used elsewhere as a

nutrient-content claim. An outside-panel statement must independently satisfy 21 C.F.R. § 101.13(c), (i)(3), and (o) where it appears.

32. The front-panel claim violates 21 C.F.R. § 101.13(c), (i)(3), and (o), with Total Sugars and the condition for expressing its amount as zero determined under § 101.9(c)(6)(ii). Defendant's labels quantify between 5 and 10 grams of allulose per labeled serving, yet the front panel declares "0g TOTAL SUGARS PER SERVING." Because those label-stated amounts greatly exceed the less-than-0.5-gram condition for expressing Total Sugars as zero, the outside-panel quantitative statement is false or misleading.

33. The back-panel comparison charts independently make quantitative and relative nutrient-content claims. They place the Product's "US" value of "0g" of sugar alongside a "THEM" value between 9 and 16 grams for a leading competing cereal. Those statements are governed by 21 C.F.R. § 101.13(c), (i)(3), (j), and (o).

34. Section 101.13(j)(2)(i)–(ii) requires the label to identify the reference food and, in immediate proximity to the most prominent relative claim, state the percentage or fraction by which the nutrient in the labeled food differs. Although the charts' raw gram values may provide the quantitative comparison required separately by § 101.13(j)(2)(iv), they do not supply the identity-plus-percentage-or-fraction disclosure required by § 101.13(j)(2)(i), in the immediate proximity required by § 101.13(j)(2)(ii). The charts generally place serving-weight information in footnotes, but they do not state the required percentage or fractional difference. Moreover, the comparison begins with a misleading "0g" value for the Products despite their 5 to 10 grams of label-stated allulose per serving.

35. The small-print FDA Representations and the Nutrition Facts declarations do not cure the outside-panel violations. Sections 101.13(c), (i)(3), (j), and (o) require the front and comparison-panel claims to comply where they are made; a disclosure elsewhere does not

eliminate the alleged falsity or misleading nature of the zero amount or provide the missing percentage or fractional difference.

36. In the alternative only, if the comparison-panel zero-sugar wording is construed as "sugar free," "zero sugar," or similar terminology, it violates 21 C.F.R. § 101.60(c)(1). The Products contain between 5 and 10 grams of allulose per labeled serving and approximately 5.56 to 10.81 grams per 40-gram RACC, all well above the less-than-0.5-gram limit both per labeled serving and per RACC. 21 C.F.R. § 101.60(c)(1)(i).

37. The Products labeling also violates 21 C.F.R. § 101.60(c)(1)(ii). That provision prohibits a sugar-free-type claim when the food contains an ingredient that is a sugar or is generally understood by consumers to contain sugars, unless the listing of that ingredient is followed by a marker referring to one of the prescribed statements that the ingredient adds a trivial, negligible, or dietarily insignificant amount of sugar. The Products' ingredient statement uses a section-symbol marker for Casein, Whey Protein Concentrate, Monk Fruit Extract, Inulin, Natural Flavor, and Vegetable Juice, keyed to "Adds a trivial amount of sugar," but does not mark allulose—the first-listed component of the Sweetener Blend. That omission violates subsection (ii) independently of the amount-based defect under subsection (i), if the comparison-panel language is construed as one of the sugar-free-type claims governed by § 101.60(c)(1).

38. The FDA's 2016 final rule stated that allulose, as a monosaccharide, must be included in the Total Sugars declaration. Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,796 (May 27, 2016). The regulation still defines Total Sugars as the sum of all free mono- and disaccharides and contains no allulose exception. 21 C.F.R. § 101.9(c)(6)(ii).

39. In October 2020, the FDA issued nonbinding guidance announcing its intent, pending rulemaking, to exercise enforcement discretion for manufacturers that exclude allulose from the gram amounts of Total Sugars and Added Sugars, and from the Added Sugars percentage

Daily Value, declared on Nutrition and Supplement Facts labels. The guidance did not amend § 101.9, redefine Total Sugars, or rescind legally enforceable rights or responsibilities. See 21 C.F.R. § 10.115(d)(1).[15]

40. The FDA Representations are therefore materially incomplete and misleading in context. They present a limited, nonbinding enforcement-discretion policy governing specified Nutrition and Supplement Facts declarations as a categorical statement of FDA classification. The FDA has not amended the binding chemical definition of Total Sugars and expressly stated that nutrient-content claims concerning sugars and added sugars would be addressed later. The Products' outside-panel amount and comparison claims remain subject to 21 C.F.R. § 101.13.[16]

41. Because the Products' labels bear allegedly false or misleading outside-panel nutrient-content claims, the Products are "misbranded" under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. § 101.13(c), (i)(3), (j), and (o), applying the Total Sugars definition and zero threshold in § 101.9(c)(6)(ii), together with § 101.12(b); and, in the alternative, § 101.60(c)(1).

## E. <u>Defendant's Conduct Violates California's Food Labeling Laws</u>

42. Defendant's marketing, advertising, distribution, and sale of the Products violate the misbranding provisions of California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), which adopts federal food-labeling regulations as California regulations. Cal. Health & Safety Code § 110100(a); see also id. § 110670.

43. Defendant's marketing, advertising, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, including:

---

[15] U.S. Food & Drug Administration, *The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry* 1, 8–9 (Oct. 2020), https://www.fda.gov/media/123342/download.

[16] U.S. Food & Drug Administration, *Sugars That Are Metabolized Differently Than Traditional Sugars*, 85 Fed. Reg. 66,335, 66,337 n.1 (Oct. 2020).

(a) Section 110660 (a food is misbranded if its labeling is false or misleading in any particular);

(b) Section 110670 (a food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims set forth in 21 U.S.C. § 343(r));

(c) Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

(d) Section 110765 (making it unlawful for any person to misbrand any food); and

(e) Section 110770 (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

44. Defendant's marketing, advertising, distribution, and sale of the Products also violate the Sherman Law's false-advertising provisions, including:

(a) Section 109885, which defines "advertisement" to include representations on products and their packages, and Section 110390, which prohibits dissemination of food advertisements that are false or misleading in any particular;

(b) Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food);

(c) Sections 110398 and 110400 (making it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

45. Because the Products bear allegedly false or misleading outside-panel sugar claims, the Products are misbranded under California law, and Defendant's advertising, distribution, and sale of the Products are unlawful.

## F. <u>Reasonable Consumers Cannot Detect Defendant's Deception</u>

46. Reasonable consumers have no reason to search the side or back panels when presented with the conspicuous front-panel representation that the Products contain "0g Total

Sugars per Serving." Consumers are not expected to look beyond a misleading representation on the front of a package to discover that the representation is false. But even if they did, Defendant made it impossible for them to reconcile that impression by affirmatively representing that the "FDA does not recognize allulose as a total or added sugar for nutrition labeling." In other words, Defendant told consumers not to worry about allulose being a sugar before they even encountered it in the Nutrition Facts panel. And if they did, they would have seen 0g for total and added sugars, plus a disclosure stating that a number of ingredients, but not allulose, added "a trivial amount of sugar." Defendant then invited consumers to subtract the 10 grams of allulose to determine the Product's actual net carbs and again reminded them that the "FDA does not consider allulose a total or added sugar for nutrition labeling." For any remaining skeptics who are willing to read and reject those assurances, Defendant told them that "[a]llulose is a rare sugar found in raisins, figs, and maple syrup," which is nutritionally superior to "regular sugar" but is not, in fact, regular sugar despite containing the same "familiar taste and texture." While contrasting allulose with cane sugar could be sensible, contrasting it with "regular sugar" makes consumers believe, again, that allulose is not actually a sugar — just the functional equivalent of one. That, again, is false and materially misleading.

47. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

## G. <u>Defendant Knew the Representations Were False</u>

48. Defendant knew, or should have known, that the Representations were false or misleading when it marketed, advertised, labeled, distributed, and sold the Products. Specifically, Defendant knew that: (a) the Products contain allulose; (b) allulose is a sugar, as its own statements

that allulose is "a special type of sugar" or "a rare sugar" confirm; (c) the Products contain between 5 and 10 grams of allulose per labeled serving; (d) its labels nevertheless represent that the Products contain "0g" of sugar; (e) Plaintiff's Fruity Product marks six other ingredients as adding a trivial amount of sugar while omitting that notation for allulose; (f) reasonable consumers would rely on the Representations when purchasing; (g) consumers would not receive the represented benefit of the bargain; and (h) the Representations enabled Defendant to charge a premium for Products containing sugar.

49. Defendant could have stopped using the Representations or ensured that they were true.

## H. Defendant's Representations Injured Plaintiff and the Classes

50. Defendant concealed or failed to disclose material facts about the Products, including: (a) the true nature of the Products' ingredients; (b) the fact that allulose is used as a bulk sweetener; (c) the fact that the Products contain between 5 and 10 grams of allulose per labeled serving—10 to 20 times the 0.5-gram cutoff and far above the less-than-0.5-gram zero threshold; (d) the fact that the Products contain sugar despite the Representations; and (e) the fact that the Products are misbranded under federal and California law when sold bearing the Representations.

51. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium price for products that were not as represented; (c) were deprived of the benefit of the bargain because the Products they purchased differed from what Defendant warranted; (d) purchased Products worth less than represented; (e) did not receive products that met the expectations Defendant created; (f) purchased Products they did not expect or consent to receive; (g) purchased Products containing sugar despite intending to buy products represented to contain none; and (h) with respect to

Plaintiff and members of the California Subclass, purchased misbranded Products that could not lawfully have been sold in California.

52. Accordingly, Plaintiff and the Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

## I. <u>Plaintiff Lacks an Adequate Remedy at Law</u>

53. Plaintiff lacks an adequate remedy at law for the future harm described above. Damages cannot remedy Plaintiff's inability to rely on Defendant's Representations when deciding whether to purchase the Products in the future. Only injunctive relief requiring Defendant to cease or correct the misleading Representations can address that prospective harm.

54. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices Plaintiff and Class Members paid and the value of the Products as received, which may not be coextensive with damages.

55. Equitable relief is additionally appropriate because the statutes of limitations for the asserted causes of action vary. The UCL and FAL carry four-year limitations periods, which may reach purchases not fully remediable under other causes of action.

56. The scope of actionable misconduct under the FAL and UCL is also broader than under the other causes of action asserted herein. The FAL and UCL prohibit Defendant's fraudulent marketing scheme. Plaintiff's warranty and common-law claims are more limited, focusing on duties arising from Defendant's Representations at the point of purchase. The UCL may also borrow statutory prohibitions that do not themselves create a private cause of action.

## CLASS ACTION ALLEGATIONS

57. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3). The proposed classes are defined below (collectively, the "Classes"):

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.
>
> **Multi-State Consumer Protection Subclass:** All persons who, during the maximum period permitted by law, purchased one or more of the Products for personal use in a state with a consumer-protection statute materially similar to the statutes identified herein.
>
> **Multi-State Warranty Subclass:** All persons who, during the maximum period permitted by law, purchased one or more of the Products for personal use in a state with express-warranty law materially similar to the laws identified herein.
>
> **California Subclass:** All persons in California who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.

58. The Classes do not include: (1) Defendant or its officers or directors; (2) the Judge or Magistrate Judge assigned to this action; (3) the assigned Judge's or Magistrate Judge's staff and family; or (4) Plaintiff's counsel or Defendant's counsel.

59. Plaintiff reserves the right to amend the class definitions and add classes or subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

60. **Community of Interest:** There is a well-defined community of interest among members of the Classes, and the disposition of their claims in a single action will provide substantial benefits to all parties and to the Court.

61. **Numerosity:** While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number at least in the thousands. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

62. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all members of the Classes and predominate over

any questions affecting only individual members of the Classes. These common legal and factual questions include, but are not limited to:

(a) Whether allulose is a sugar;

(b) Whether Defendant's Representations that the Products contain "0g Sugar" were false or misleading;

(c) Whether reasonable consumers would understand Defendant's representations and warranties concerning the Products to be untrue and misleading;

(d) Whether Defendant's representations and warranties were material;

(e) Whether the Products are misbranded under federal law and, with respect to the California Subclass, California law;

(f) Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

(g) Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount of those damages;

(h) Whether Plaintiff and the members of the Classes are entitled to statutory damages; and

(i) Whether Plaintiff and the members of the Classes are entitled to attorneys' fees and costs.

63. With respect to the California Subclass, additional questions of law and fact common to the members include whether Defendant violated California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq., and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.

64. Typicality: Plaintiff's claims are typical of the claims of other members of the Classes because Plaintiff was exposed to Defendant's Representations, purchased the Fruity

Product in reliance on those Representations, and suffered the same type of economic loss alleged for Class Members who purchased the Products.

65. **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate representative because she has no interests adverse to those of the Classes, is committed to the vigorous prosecution of this action, and has retained skilled and experienced counsel.

66. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual litigation make it economically unfeasible for members of the Classes to seek redress outside a class action. Even if Class Members could afford individual litigation, the resulting burden on the courts would be substantial. Individualized litigation would also create a risk of varying, inconsistent, or contradictory judgments and would magnify delay and expense by requiring multiple trials of the same factual issues. By contrast, maintaining this action as a class action with respect to some or all issues presents fewer management difficulties, conserves the resources of the parties and courts, and protects each Class Member's rights. Plaintiff anticipates no difficulty in managing this action as a class action. Classwide relief is essential to compel compliance with applicable consumer-protection laws. Separate actions could also subject Defendant to inconsistent obligations.

## CAUSES OF ACTION

### COUNT I
### Violation of California's Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code § 1750 et seq.
### (On Behalf of Plaintiff and the California Subclass)

67. Plaintiff Mirzaian incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

68. Plaintiff brings this claim on behalf of herself and the California Subclass against Defendant.

69. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."

70. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

71. Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

72. Defendant profited from sales of the falsely and deceptively advertised Products by representing that the Products contain "0g Sugar" even though they contain between 5 and 10 grams of allulose per labeled serving—10 to 20 times the 0.5-gram cutoff.

73. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

74. On August 14, 2026, counsel for Plaintiff mailed a pre-suit notice letter pursuant to Cal. Civ. Code § 1782 via certified mail, return receipt requested, to Defendant. The letter provided notice of the alleged CLRA violations and other consumer-protection violations on behalf of the Class Members and demanded that Defendant correct the unlawful, unfair, false, and deceptive practices alleged herein.

75. Plaintiff and the California Subclass Members currently seek injunctive relief under the CLRA and reserve the right to amend the Complaint to seek any additional relief authorized after expiration of the statutory notice period. Cal. Civ. Code §§ 1780, 1782(d).

**COUNT II**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

76. Plaintiff hereby incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

77. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

78. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unfair, fraudulent, and unlawful business practices.

79. Plaintiff has standing to pursue this claim because she suffered an injury in fact and lost money or property as a result of Defendant's conduct. Plaintiff purchased the Fruity Product for personal use, relied on Defendant's representation that it contained "0g TOTAL SUGARS PER SERVING," and spent money she otherwise would not have spent had she known it contained 10 grams of allulose per serving.

80. The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of herself and others similarly situated who are affected by the unlawful or unfair business practice or act.

81. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code § 17200 et seq.

82. Defendant violated the UCL's proscription against engaging in Unlawful Business Practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; the CLRA, Cal. Civ. Code § 1770 et seq.; the Sherman Law, including, without limitation, Cal. Health & Safety Code §§ 110100, 110390, 110395, 110398, 110400, 110660, 110670, 110760, 110765, and 110770; and the federal food-labeling requirements adopted by the Sherman Law, including 21 U.S.C. § 343(a)(1) and (r)(1)(A) and 21 C.F.R. § 101.13(c), (i)(3), (j), and (o), applying the Total Sugars definition and zero threshold in § 101.9(c)(6)(ii), together with § 101.12(b).

83. Defendant has also violated the UCL's proscription against engaging in **Unfair Business Practices.** Defendant's acts, omissions, misrepresentations, practices, and nondisclosures as alleged herein also constitute unfair business acts and practices within the meaning of Business & Professions Code § 17200 et seq. Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity of Defendant's conduct outweighs any alleged benefits attributable to it. There is no utility in representing that cereals containing between 5 and 10 grams of allulose per labeled serving contain "0g Sugar." Furthermore, Defendant's false and misleading representations are detrimental to competitors offering breakfast cereals that either do not make similar claims or do not contradict those claims by sweetening their products with sugar. Defendant's misrepresentations and omissions therefore harm consumers and the market as a whole.

84. Plaintiff and the California Subclass Members suffered substantial injury by buying Products they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the presence and amount of sugar in the Products.

85. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefor, particularly considering the available legal

alternatives in the marketplace. Such conduct is immoral, unethical, or unscrupulous; it offends established public policy and is substantially injurious to Plaintiff and the California Subclass Members.

86. Plaintiff and the California Subclass Members could not reasonably have avoided their injury or known that the Products' prominent labeling and marketing were inaccurate. Consumers lack the specialized knowledge to determine whether an ingredient such as allulose is a sugar. Defendant's front-panel disclaimer framed the omission as an FDA nutrition-labeling convention, while the side panels disclosed label-stated allulose amounts. Those qualified and contradictory disclosures did not enable reasonable consumers to avoid the injury.

87. Pursuant to California Business and Professions Code § 17203, Plaintiff Mirzaian and the California Subclass Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT III**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff Mirzaian and the California Subclass)**

88. Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

89. Plaintiff brings this claim on behalf of herself and the California Subclass against Defendant.

90. Defendant's acts and practices, as described herein, have deceived or are likely to deceive members of the California Subclass and the public. Defendant represents that the Products contain "0g Sugar" even though they contain between 5 and 10 grams of allulose per labeled serving—10 to 20 times the 0.5-gram cutoff.

91. Defendant has disseminated uniform advertising regarding the Products throughout California and the United States. The advertising was unfair, deceptive, untrue, or misleading

within the meaning of Cal. Bus. & Prof. Code § 17500 and was intended and likely to deceive consumers.

92. Defendant's above-described advertising is likely to deceive because Defendant affirmatively represents that the Products contain "0g TOTAL SUGARS PER SERVING" and "0g Sugar."

93. In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue or misleading. Plaintiff Mirzaian and the California Subclass based their purchasing decisions on Defendant's materially false Representations and were injured in fact and lost money or property as a result.

94. Defendant's misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 et seq.

95. Plaintiff and the California Subclass Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT IV**
**Violation of Consumer Protection Statutes**
**(On Behalf of Plaintiff and the Multi-State Consumer Protection Subclass)**

96. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

97. Plaintiff brings this claim on behalf of the Multi-State Consumer Protection Subclass against Defendant.[17]

---

[17] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include, but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code § 1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen. Stat. § 42-110a et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann. § 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code Ann. § 48-601, et seq.; 815 ILCS 505/1 et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen. Laws Ann. Ch. 93A, et seq.; Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann.

98. Defendant's acts and practices have deceived or are likely to deceive members of the Multi-State Consumer Protection Subclass and the public. Defendant represents that the Products contain "0g Sugar" even though they contain allulose in amounts ranging from 5 to 10 grams per labeled serving.

99. The foregoing deceptive acts and practices were directed at consumers.

100. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

101. As a result of Defendant's deceptive practices, Plaintiff and members of the Multi-State Consumer Protection Subclass suffered economic injury because they would not have purchased the Products or would have paid less for them had they known that the Products contained sugar and did not conform to the Representations.

102. Plaintiff and members of the Multi-State Consumer Protection Subclass seek to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

**COUNT V**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Multi-State Warranty Subclass)**

103. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

104. Plaintiff brings this claim on behalf of the Multi-State Warranty Subclass against Defendant.[18]

§ 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen. Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1-5.2(b); S.C. Code Ann. §§ 39-5-10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Bus. & Com. Code § 17.41 et seq.; Utah Code Ann. § 13-11-1 et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

[18] While discovery may alter the following, Plaintiff asserts that the states with similar express warranty laws under the facts of this case include, but are not limited to: Alaska Stat. § 45.02.313; A.R.S. § 47-2313; Ark. Code § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; 6 Del. C. § 2-313; D.C. Code § 28:2-313; Ga. Code § 11-

105. Defendant's express warranties formed part of the basis of the bargain when Plaintiff and members of the Multi-State Warranty Subclass purchased the Products, including through authorized retailers such as Costco.

106. The warranties include the promises and affirmations of fact Defendant made on the Products' packaging and in its marketing that the Products contain "0g TOTAL SUGARS PER SERVING" and "0g Sugar."

107. This labeling and advertising constitute express warranties and became part of the basis of the bargain for Plaintiff and members of the Multi-State Warranty Subclass when they purchased the Products.

108. As set forth above, Defendant purports through its labeling, marketing, and packaging to warrant that the Products contain "0g Sugar." Defendant breached its express warranties by selling Products that each contain between 5 and 10 grams of allulose per labeled serving. The Products do not conform to Defendant's Representations and warranties.

109. Plaintiff provided Defendant written pre-suit notice of the challenged representations on August 14, 2026. Defendant did not cure. Plaintiff and members of the Multi-State Warranty Subclass satisfied, or were excused from, any other applicable conditions precedent.

110. Plaintiff and the members of the Multi-State Warranty Subclass would not have purchased the Products had they known the Products' true nature.

---

2-313; HRS § 490:2-313; Idaho Code § 28-2-313; 810 ILCS 5/2-313; Ind. Code § 26-1-2-313; K.S.A. § 84-2-313; KRS § 355.2-313; 11 M.R.S. § 2-313; Mass. Gen. Laws Ann. ch. 106 § 2-313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; R.S. Mo. § 400.2-313; Mont. Code Ann. § 30-2-313; Neb. U.C.C. § 2-313; Nev. Rev. Stat. Ann. § 104.2313; RSA 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; ORC Ann. § 1302.26; 12A Okl. St. § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code § 2.313; Utah Code Ann. § 70A-2-313; 9A V.S.A. § 2-313; Va. Code § 8.2-313; Wash. Rev. Code Ann. § 62A.2-313; W. Va. Code § 46-2-313; and Wyo. Stat. Ann. § 34.1-2-313.

111. As a result, Defendant breached the express warranties made to the Multi-State Warranty Subclass. Plaintiff and all members of the Multi-State Warranty Subclass suffered financial injury and are entitled to relief allowed by law.

## COUNT VI
## Unjust Enrichment
## (On Behalf of Plaintiff and the Nationwide Class)

112. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

113. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant under California law or, in the alternative, under the substantially similar laws of the states applicable to members of the Nationwide Class.

114. To the extent required, Plaintiff asserts this cause of action in the alternative to her legal claims, as permitted by Federal Rule of Civil Procedure 8.

115. Defendant's false and misleading zero-sugar representations caused Plaintiff and Class Members to pay a price premium for the Products.

116. Defendant thereby received a direct and unjust benefit at the expense of Plaintiff and Class Members.

117. Plaintiff and Class Members seek the return of that unjust benefit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a) For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Classes, and Plaintiff's Counsel as Class Counsel;

b) For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d) For damages available under the asserted causes of action, excluding CLRA damages unless and until properly added after satisfaction of Cal. Civ. Code § 1782;

e) For prejudgment interest on all amounts awarded;

f) For restitution to the extent permitted by applicable law;

g) For injunctive relief as pleaded or as the Court may deem proper, including an order requiring Defendant to cease labeling, marketing, and selling the Products with the Representations and to make affirmative disclosures sufficient to dispel the public misperception created by Defendant's conduct; and

h) For an order awarding Plaintiff's and the Classes' reasonable attorneys' fees, expenses, and costs of suit.

i) For such other and further relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: August 19, 2026

Respectfully submitted,

**GUCOVSCHI LAW FIRM, PLLC**

By: /s/ Adrian Gucovschi
Adrian Gucovschi, Esq.
165 Broadway, Fl. 23
New York, NY 10006
Telephone: (212) 884-4230
Email: adrian@gucovschilaw.com

Counsel for Plaintiff and the Classes