**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BIANCA MIRZAIAN, MARYAM KAZEMI, and DAVID FREIFELD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAGIC SPOON INC.<br><br>Defendant. | Civil Action No. 1:26-cv-07075-CM<br><br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Bianca Mirzaian, Maryam Kazemi, and David Freifeld ("Plaintiffs"), by and through undersigned counsel, bring this action on behalf of themselves and all others similarly situated against Magic Spoon Inc. ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiffs bring this class action on behalf of themselves and all similarly situated consumers who purchased Magic Spoon cereals marketed as containing "0g Sugar" (as defined below, the "Products").[1]

2. Defendant markets and advertises the Products as containing "0g TOTAL SUGARS PER SERVING," and uses comparison panels that present the Products as containing

[1] The Products include the following 7-ounce Magic Spoon cereal variants marketed as containing "0g Sugar" and listing allulose in their Sweetener Blend: Cocoa, Fruity, Cinnamon Crunch, Peanut Butter, Maple Waffle, Birthday Cake, Blueberry Muffin, Chocolate Chip Cookie, S'mores, Honey Nut, and Frosted. Plaintiff Mirzaian separately purchased the 14-ounce Fruity Product. The allegations also encompass materially identical configurations bearing the challenged representations.

"0g" of sugar while leading competing cereals contain between 9 and 16 grams of sugar per serving (collectively, the "Zero Sugar Representations"). However, unbeknownst to reasonable consumers, the Products contain sugar in the form of allulose. Allulose is a monosaccharide and therefore a sugar under the applicable federal and California labeling standards. It is not present in trace amounts: Defendant's labels quantify between 5 and 10 grams of allulose per labeled serving.

3. Defendant's labels disclose between 5 and 10 grams of allulose per labeled serving—10 to 20 times the 0.5-gram cutoff and far above the less-than-0.5-gram quantity that 21 C.F.R. § 101.9(c)(6)(ii) permits to be expressed as zero. The Products include (1) Magic Spoon Fruity Cereal; (2) Magic Spoon Cocoa Cereal; (3) Magic Spoon Peanut Butter Cereal; (4) Magic Spoon Frosted Cereal; (5) Magic Spoon Blueberry Muffin Cereal; (6) Magic Spoon Honey Nut Cereal; (7) Magic Spoon Chocolate Chip Cookie Cereal; (8) Magic Spoon Birthday Cake Cereal; (9) Magic Spoon Maple Waffle Cereal; (10) Magic Spoon Cinnamon Crunch Cereal; and (11) Magic Spoon S'mores Cereal (collectively, the "Products").

4. Accordingly, Plaintiffs bring claims against Defendant for violations of: (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; (4) Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*; (5) New York Gen. Bus. Law § 349; (6) New York Gen. Bus. Law § 350; (7) breach of express warranty; (8) unjust enrichment, and (9) common law fraud.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because the proposed Classes include more than 100 members, the aggregate claims of the proposed Classes exceed $5,000,000, exclusive of interest and costs, and at least one member of the proposed Classes is a citizen of a state different from Defendant.

6. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in New York, New York and is therefore at home in this State.

7. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District.

## PARTIES

8. Plaintiff Bianca Mirzaian is a citizen of California residing in Glendale, California. Plaintiff Mirzaian purchased Defendant's Magic Spoon Fruity Cereal, 14 oz (the "Fruity Product"), for her personal use from a Costco warehouse located in Los Angeles, California, on multiple occasions. Her most recent purchase was on July 20, 2025, for $24.98. Prior to making her purchase, Plaintiff saw and relied on Defendant's prominent representation that the Fruity Product contained "0g TOTAL SUGARS PER SERVING." Plaintiff also saw and relied on the comparison chart on the back panel of the Fruity Product, which represents "0g" of sugar for the Fruity Product against "12g" for a leading fruit-flavored cereal brand. Based on these representations, Plaintiff reasonably believed that the Fruity Product contained no sugar, and 12 grams less sugar than the referenced leading fruit-flavored cereal. These representations were part of the basis of Plaintiff's bargain, and she would not have purchased the Fruity Product on the same terms had she known they were untrue. Plaintiff also paid a price premium because of Defendant's false and misleading 0g-sugar claims but did not receive the benefit of her bargain. The Fruity Product was sweetened with 10 grams of allulose—a sugar—per 38-gram labeled serving, approximately 26.3% of the serving by weight. Had Plaintiff known the truth, she would not have purchased the Fruity Product or would have paid substantially less for it.

9. Plaintiff Mirzaian remains interested in purchasing high-protein breakfast cereals that truly contain no sugar. However, she cannot know for certain whether Defendant's false labeling and marketing have been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the Zero Sugar Representations, Plaintiff will be unable

to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Products' marketing is accurate. Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food products. Neither Plaintiff nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

10. Plaintiff Maryam Kazemi is a California citizen and resident of Rohnert Park, California. In or around September 2025, Plaintiff Kazemi purchased Defendant's Magic Spoon Fruity Cereal Product from a Costco store in Rohnert Park, California. Before purchasing, Plaintiff Kazemi saw and relied on the Zero Sugar Representations on the cereal's packaging. Based on those representations, Plaintiff Kazemi reasonably believed that the cereal was free of sugar, and she paid a price premium for it on that basis. Had she known that the cereal was not free of sugar, she would not have purchased it, or would have paid significantly less for it.

11. Despite Defendant's misrepresentations, Plaintiff Kazemi would purchase the Products, as advertised, if they were actually free of sugar. Although Plaintiff Kazemi regularly shops at various retail stores that carry the Products, absent an injunction of Defendant's deceptive advertising, she will be unable to rely with confidence on Defendant's advertising of the Products in the future. Furthermore, while Plaintiff currently believes that the Products are not free of sugar, she lacks personal knowledge as to Defendant's specific business practices, and thus, she will not be able to determine whether the Products truly will accurately reflect their advertising. This leaves doubt in her mind as to the possibility that at some point in the future the Products could be made in accordance with the Zero Sugar Representations. This uncertainty, coupled with her desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the alleged misleading representations. In addition, other Class members will continue to purchase the Products, reasonably but incorrectly, believing that the Products are free of sugar.

12. Plaintiff David Freifeld is an Illinois citizen and resident of Vernon Hills, Illinois. In July 2026, Plaintiff Freifeld purchased Defendant's Fruity Cereal from an Aldi store in Vernon Hills, Illinois. Plaintiff relied on Defendant's representations that the Products contained "0g Total Sugars" and would not have purchased the Products, or would have paid less, had he known the truth. These representations were prepared and approved by Defendant and its agents and disseminated statewide and nationwide to encourage consumers to purchase the Products.

13. Plaintiff Freifeld would like to purchase the Products again only if he can be sure that Defendant is compliant with relevant consumer protection law. Plaintiff continues to see Defendant's Products available for purchase, and desires to purchase them again if the Zero Sugar Representations were in fact true. Since Plaintiff would like to purchase the Products again to obtain a cereal product that, as advertised, is truly free of sugars, Plaintiff would purchase them again in the future, despite the fact that they were once marred by false advertising or labeling, as Plaintiff would reasonably, but incorrectly, assume the Products were improved (no longer contain sugar). In that regard, Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, and formulation of food and beverage products, such as the Products. Neither Plaintiff, nor reasonable consumers, have the requisite knowledge to accurately determine whether ingredients such as allulose are or are not sugars. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant fixed the formulation of the Products such that Plaintiff may buy them again, believing them to no longer be falsely advertised. Plaintiff is, therefore, currently and in the future deprived of the ability to rely on the Zero Sugar Representations. Based on information and belief, the labeling of the Products purchased by Plaintiff is typical of the labeling of the Products purchased by members of the Classes.

14. Defendant Magic Spoon Inc. is a Delaware corporation with its principal place of business in New York, New York. Defendant markets, distributes, and sells the Products throughout California and the United States, including in this District.

## FACTUAL ALLEGATIONS

### A. Consumers Seek Out and Pay More for Products That Contain No Sugar

15. Consumer demand for products without sugar is well documented. A 2022 nationwide survey found that 73% of Americans ages 18 to 80 reported trying to limit or avoid sugars.[2]

16. That demand accords with widespread public-health guidance. The 2025–2030 Dietary Guidelines for Americans state that no amount of added sugars is recommended or considered part of a healthy or nutritious diet and that one meal should contain no more than 10 grams of added sugars. The World Health Organization recommends limiting free sugars to less than 10 percent of total daily energy intake and states that limiting them further to 5 percent or less may provide additional health benefits. The American Heart Association recommends limiting added sugars to no more than 6 percent of daily calories.[3]

17. Food and beverage manufacturers are acutely aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "sugar free" and "zero sugar" command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

18. Defendant has capitalized on that demand. It markets cereals that contain gram-scale quantities of allulose, a sugar, while labeling and advertising them as containing "0g Sugar."

---

[2] INTERNATIONAL FOOD INFORMATION COUNCIL, *2022 Food & Health Survey 57* (May 18, 2022), https://ific.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf.

[3] U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES & U.S. DEPARTMENT OF AGRICULTURE, DIETARY GUIDELINES FOR AMERICANS, 2025–2030, at 5 (Jan. 2026), https://cdn.realfood.gov/DGA.pdf; WORLD HEALTH ORGANIZATION, *Healthy Diet* (Jan. 26, 2026), https://www.who.int/news-room/fact-sheets/detail/healthy-diet; AMERICAN HEART ASSOCIATION, *Added Sugars* (last reviewed Aug. 2, 2024), https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars.

Defendant thereby obtained an unfair competitive advantage over competitors whose no-sugar claims are true, at the expense of unwitting consumers.

19. Indeed, reasonable consumers understand the phrase "0g Total Sugars" in its ordinary, everyday sense: 0g, meaning "zero grams," and total sugars meaning that they "include sugars naturally present in many nutritious foods and beverages, such as sugar in milk and fruits as well as any added sugars that may be present in the product."[4]

### B. Defendant's Zero Sugar Representations and Warranties

20. Defendant prominently represents on the front panel of each Product's label that it contains "0g TOTAL SUGARS PER SERVING." The comparison panel on the back of each Product reinforces that message, stating that the Product contains "0g" of sugar while a leading competing cereal contains between 9 and 16 grams, depending on the label. Fruity and Maple Waffle use the header "SUGAR"; the other reviewed labels use "TOTAL SUGARS." These statements constitute the Zero Sugar Representations.

21. In April 2019, Defendant announced the launch of the Products as a way to "recreate classic childhood cereals, with more protein, less sugar [and] less carbs[.]"[5]

22. Defendant prominently markets the Products as containing "0g Total Sugars," including on the front label of each of its cereal Products:

[4] U.S. FOOD AND DRUG ADMINISTRATION, *Sugars on the Nutrition Facts Label, available at* https://www.fda.gov/media/135299/download (last accessed August 17, 2026).

[5] Julia Waldow, *Being 'everywhere that people buy and sell cereal:' How Magic Spoon went from online-only to wholesale in six months*, MODERN RETAIL (2023), *available at* https://www.modernretail.co/operations/being-everywhere-that-people-buy-and-sell-cereal-how-magic-spoon-went-from-online-only-to-wholesale-in-six-months/


MAGIC SPOON
PROTEIN CEREAL
13g PROTEIN
0g TOTAL SUGARS
4g NET CARBS
Fruity
MAGIC SPOON
PROTEIN CEREAL
13g PROTEIN
0g TOTAL SUGARS
4g NET CARBS
Cocoa
NET WT 7 OZ (198g)
MAGIC SPOON
PROTEIN CEREAL
14g PROTEIN
0g TOTAL SUGARS
4g NET CARBS
Peanut Butter
NET WT 7 OZ (198g)


MAGIC SPOON
PROTEIN CEREAL
13g PROTEIN
0g TOTAL SUGARS
4g NET CARBS
Frosted
NET WT 7 OZ (198g)
MAGIC SPOON
PROTEIN CEREAL
13g PROTEIN
0g TOTAL SUGARS
5g NET CARBS
Blueberry Muffin
NET WT 7 OZ (198g)
MAGIC SPOON
PROTEIN CEREAL
12g PROTEIN
0g TOTAL SUGARS
4g NET CARBS
Cinnamon Crunch
NET WT 7 OZ (198g)


MAGIC SPOON
PROTEIN CEREAL
13g PROTEIN
0g TOTAL SUGARS
4g NET CARBS
Honey Nut
MAGIC SPOON
GRAIN-FREE CEREAL
0g TOTAL SUGARS
5g NET CARBS
13g PROTEIN
Chocolate Chip Cookie
NET WT 7 OZ (198g)
MAGIC SPOON
GRAIN-FREE CEREAL
0g TOTAL SUGARS
4g NET CARBS
13g PROTEIN
Birthday Cake




23. Defendant confirms its Zero Sugar Representations on the backs of the boxes:












24. Defendant's "0g Total Sugars" marketing extends beyond the label. Its digital campaign—spanning TV, in-app, and paid social media advertising—repeats the same messaging.

25. In Defendant's video ad, a voice narrates: "13 grams of protein, **0 sugar**" and another voice responds: "taste for yourself"[6] (emphasis added).

26. Defendant carries the "0g Total Sugars" campaign onto every third-party retail platform where it sells the Products.

---

[6] *Magic Spoon Cereal – Talking Box – 15s*, MAGIC SPOON (2026), https://youtu.be/rzdJ5jZDAJ4?is=nGrcWqzJCuR-K-OV.

27. On Amazon, Defendant names the Products "sugar free snacks & breakfast food . . ." and repeats "0g Sugar" and "Low Sugar" in scrollable graphics.[7]




---

[7] *Magic Spoon High Protein Cereal Variety 4 Pack - Keto & Gluten Free Fruity, Cocoa, Classic Marshmallow & Peanut Butter, sugar free snacks & breakfast food, grain free, low carb*, AMAZON, *available at* https://www.amazon.com/dp/B08SSVY1PQ?ref_=cm_sw_r_cp_ud_dp_9J38J6Z2B1PR914J7PMV (last accessed August 17, 2026).







28. The same graphics appear across Product flavors and Defendant's other third-party retail pages.







29. Similarly on Instagram, Defendant compares its Products' sugar content to that of its competitors:[8]

[8] INSTAGRAM, *available at* https://www.instagram.com/magicspooncereal?igsh=NTc4MTIwNjQ2YQ==&igsi=NTc4MTIwNjQ2YQ== (last accessed August 17, 2026).










30. However, the Products do contain sugar, in the form of allulose. Specifically, as Defendant states on its website, each Product contains between 5 and 10 grams of allulose per serving.

31. The Zero Sugar Representations communicate to reasonable consumers that the Products contain no sugar. That is the plain and ordinary meaning of "0g TOTAL SUGARS PER SERVING" and "0g Sugar."

32. The Zero Sugar Representations are absolute, objective, and quantitative claims concerning the sugar levels of the Products, and Defendant's small-print disclosures do not qualify them. Depending on the label, Defendant states in small font on the front panel either "Not a low-calorie food. See nutrition facts for calorie content. FDA does not consider allulose a total or added sugar for nutrition labeling," or "Not a low-calorie food. See nutrition facts for calorie and total sugar content. FDA does not consider allulose a total or added sugar for nutrition labeling." These statements do not tell consumers that allulose is a sugar or that the Products contain sugar. Instead, by invoking FDA, both statements suggest that allulose is not a sugar at all. Thus, even though Defendant's labels disclose that the Products contain between 5 and 10 grams of allulose, a sugar,

per labeled serving, these disclosures just reinforce, rather than cure, the materially misleading impression created by the Zero Sugar Representations—i.e., that allulose is not a sugar.

**C. <u>Allulose Is a Sugar</u>**

33. Allulose is a sugar.

34. Chemically, allulose is a monosaccharide. It is the C-3 epimer of D-fructose, meaning that allulose and fructose have the same molecular formula and connectivity but differ in the spatial orientation of a hydroxyl group at the third carbon. "D-allulose, a C-3 epimer of D-fructose, is a rare monosaccharide used as a food ingredient or a sweetener."[9] Allulose is accordingly "a rare sugar," and "a monosaccharide that is low in calories and that maintains approximately 70% of sweetness relative to sugar."[10]

35. Allulose is not merely a sugar as a matter of chemical classification. It is used as one. Allulose has "70% of the sweetness of sucrose, which means it is viewed as a potential alternative sweetener."[11] The food science literature describes allulose and other rare sugars as "monosaccharides with sweetness similar to those as caloric sugars, but [with] low caloric values," which "are now widely used as sugar substitutes."[12]

36. Because allulose is less sweet than table sugar, it is used in gram-scale quantities as a bulk sweetener. High-intensity sweeteners such as saccharin, aspartame, acesulfame potassium, neotame, sucralose, and advantame are approximately 200 to 20,000 times as sweet as sucrose. By contrast, allulose has approximately 70% of sucrose's sweetness and, as the Products'

---

[9] Han-Joo Maeng et al., *Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol*, 8 FOODS ART. 448, at 1 (2019), https://doi.org/10.3390/foods8100448.

[10] Youngji Han et al., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*, 10 NUTRIENTS ART. 2010, at 1–2 (2018), https://doi.org/10.3390/nu10122010.

[11] Maeng et al., *supra* note 9, at 2.

[12] Maeng et al., *supra* note 9, at 9–10.

own labels show, is used in large quantities as a bulk sweetener. The Products use between 5 and 10 grams of allulose per labeled serving. Plaintiff Mirzaian's Fruity Product contained 10 grams in a 38-gram labeled serving—approximately 26.3% of the serving by weight.[13][14]

37. Allulose also behaves like sugar in food. "It is convenient for the food industry to use D-allulose, as its chemical properties are similar to those of fructose in terms of solubility, water activity, and viscosity."[15] It is used as "a partial replacement of added sugars."[16] Allulose is "widely regarded as a promising substitute for sucrose"—that is, a substitute for table sugar, and one that is itself a sugar.[17]

38. In the Products, allulose is the first-listed component of the "Sweetener Blend," ahead of monk fruit extract, and the side panels quantify between 5 and 10 grams of allulose per labeled serving. Those amounts are approximately 13.9% to 27.0% of the 36- to 38-gram labeled servings. Table 2 to 21 C.F.R. § 101.12(b) assigns a 40-gram reference amount customarily consumed ("RACC") to ready-to-eat cereal weighing 20 grams or more but less than 43 grams per cup. Proportionally scaling the labels' rounded values to that 40-gram RACC yields approximately 5.56 to 10.81 grams of allulose per RACC; for Fruity, the result is approximately 10.53 grams. These figures are calculations from Defendant's label-stated, rounded values, not laboratory measurements.

---

[13] U.S. FOOD & DRUG ADMINISTRATION, *Aspartame and Other Sweeteners in Food*, https://www.fda.gov/food/food-additives-petitions/aspartame-and-other-sweeteners-food (last visited Aug. 18, 2026).

[14] Mengting Tao, Wenli Zhang & Wanmeng Mu, *D-Allulose: A New Generation of Potential Bulk Sweeteners in the Food Industry*, 73 J. AGRIC. & FOOD CHEM. 27,833, 27,833–35 (2025) (Viewpoint), https://doi.org/10.1021/acs.jafc.5c13620.

[15] Han et al., *supra* note 10, at 10.

[16] *Id.*

[17] Wenli Zhang et al., *D-Allulose, a Versatile Rare Sugar: Recent Biotechnological Advances and Challenges*, 63 CRITICAL REVS. FOOD SCI. & NUTRITION 5661, 5661 (2023) (published online Dec. 29, 2021), https://doi.org/10.1080/10408398.2021.2023091.

39. The Food and Drug Administration ("FDA") identifies allulose as a sugar. In its 2016 Nutrition Facts rulemaking, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[18] The current regulation continues to define Total Sugars as "the sum of all free mono- and disaccharides" and does not exclude allulose. 21 C.F.R. § 101.9(c)(6)(ii).

40. The Calorie Control Council likewise describes allulose under the heading "Allulose is a Naturally Occurring Sugar" and states that "[a] monosaccharide, or simple sugar, allulose is absorbed by the body, but not metabolized, so it is nearly calorie-free."[19] Defendant itself recognizes this by stating on the side panel, depending on the label, that allulose is "a special type of sugar" or "a rare sugar found in raisins, figs, and maple syrup," and that it has "the same familiar taste and texture as regular sugar." Yet Defendant simultaneously states that "FDA does not consider allulose a total or added sugar for nutrition labeling" and touts the Products as containing "0g TOTAL SUGARS PER SERVING." FDA's binding regulation continues to classify Total Sugars by chemical structure and contains no allulose exception. FDA's nonbinding guidance instead announces a limited enforcement-discretion policy, pending rulemaking, for amounts declared on Nutrition and Supplement Facts panels. Defendant's unqualified statement is therefore materially misleading in the context of the outside-panel zero and comparison claims because it converts that limited enforcement posture into a categorical FDA classification.

## D. <u>The Products Violate the FDA Nutrient Content Regulations</u>

41. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education

[18] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,796 (May 27, 2016).

[19] Calorie Control Council, Allulose, https://caloriecontrol.org/ingredients/sweeteners/allulose/ (last visited Aug. 11, 2026).

Act, 21 U.S.C. § 301 *et seq.* FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

42. Section 101.9(c)(6)(ii) requires a Total Sugars declaration here and defines Total Sugars as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." It permits Total Sugars to be expressed as zero only when a serving contains less than 0.5 gram of sugars. Allulose is a free monosaccharide, and the binding regulation contains no allulose exception.

43. FDA regulations distinguish information appearing within the Nutrition Facts panel from statements appearing elsewhere on a label. Information within the Nutrition Facts panel is not itself a nutrient-content claim, but the same information placed outside that panel is subject to the nutrient-content-claim regulations. 21 C.F.R. § 101.13(c). Defendant's front-panel "0g TOTAL SUGARS PER SERVING" statement appears outside the Nutrition Facts panel and is a quantitative statement of nutrient amount governed by § 101.13(i)(3), which permits such a statement only if it is not false or misleading. FDA itself identifies "0 g total sugars" as an amount statement described by § 101.13(i)(3).[20] Under § 101.13(o), compliance is determined using the analytical methodology prescribed by § 101.9, including the applicable compliance provisions in § 101.9(g).

44. The permissibility of a declaration inside the Nutrition Facts panel does not determine whether the same numerical statement is false or misleading when used elsewhere as a nutrient-content claim. An outside-panel statement must independently satisfy 21 C.F.R. § 101.13(c), (i)(3), and (o) where it appears.

45. The front-panel claim violates 21 C.F.R. § 101.13(c), (i)(3), and (o), with Total Sugars and the condition for expressing its amount as zero determined under § 101.9(c)(6)(ii).

---

[20] *See* U.S. FOOD & DRUG ADMINISTRATION, *Industry Resources on the Changes to the Nutrition Facts Label*, https://www.fda.gov/food/nutrition-food-labeling-and-critical-foods/industry-resources-changes-nutrition-facts-label.

Defendant's labels quantify between 5 and 10 grams of allulose per labeled serving, yet the front panel declares "0g TOTAL SUGARS PER SERVING." Because those label-stated amounts greatly exceed the less-than-0.5-gram condition for expressing Total Sugars as zero, the outside-panel quantitative statement is false or misleading.

46. The back-panel comparison charts independently make quantitative and relative nutrient-content claims. They place the Product's "US" value of "0g" of sugar alongside a "THEM" value between 9 and 16 grams for a leading competing cereal. Those statements are governed by 21 C.F.R. § 101.13(c), (i)(3), (j), and (o).

47. Section 101.13(j)(2)(i)–(ii) requires the label to identify the reference food and, in immediate proximity to the most prominent relative claim, state the percentage or fraction by which the nutrient in the labeled food differs. Although the charts' raw gram values may provide the quantitative comparison required separately by § 101.13(j)(2)(iv), they do not supply the identity-plus-percentage-or-fraction disclosure required by § 101.13(j)(2)(i), in the immediate proximity required by § 101.13(j)(2)(ii). The charts generally place serving-weight information in footnotes, but they do not state the required percentage or fractional difference. Moreover, the comparison begins with a misleading "0g" value for the Products despite their 5 to 10 grams of label-stated allulose per serving.

48. The small-print representations that the FDA does not consider allulose a total or added sugar for nutrition labeling, and the disclosures in the Nutrition Facts panel, do not cure the outside-panel violations. Sections 101.13(c), (i)(3), (j), and (o) require the front and comparison-panel claims to comply where they are made. A small-print statement nearby or a disclosure elsewhere on the label does not eliminate the falsity or misleading nature of the zero amount or provide the missing percentage or fractional difference.

49. In the alternative only, if the comparison-panel zero-sugar wording is construed as "sugar free," "zero sugar," or similar terminology, it violates 21 C.F.R. § 101.60(c)(1). The

Products contain between 5 and 10 grams of allulose per labeled serving and approximately 5.56 to 10.81 grams per 40-gram RACC, all well above the less-than-0.5-gram limit both per labeled serving and per RACC. 21 C.F.R. § 101.60(c)(1)(i).

50. The Products' labeling also violates 21 C.F.R. § 101.60(c)(1)(ii). That provision prohibits a sugar-free-type claim when the food contains an ingredient that is a sugar or is generally understood by consumers to contain sugars, unless the listing of that ingredient is followed by a marker referring to one of the prescribed statements that the ingredient adds a trivial, negligible, or dietarily insignificant amount of sugar. The Products' ingredient statement uses a section-symbol marker for Casein, Whey Protein Concentrate, Monk Fruit Extract, Inulin, Natural Flavor, and Vegetable Juice, keyed to "Adds a trivial amount of sugar," but does not mark allulose—the first-listed component of the Sweetener Blend. That omission violates subsection (ii) independently of the amount-based defect under subsection (i), if the comparison-panel language is construed as one of the sugar-free-type claims governed by § 101.60(c)(1).

51. The FDA's 2016 final rule stated that allulose, as a monosaccharide, must be included in the Total Sugars declaration. Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,796 (May 27, 2016). The regulation still defines Total Sugars as the sum of all free mono- and disaccharides and contains no allulose exception. 21 C.F.R. § 101.9(c)(6)(ii).

52. In October 2020, the FDA issued nonbinding guidance announcing its intent, pending rulemaking, to exercise enforcement discretion for manufacturers that exclude allulose from the gram amounts of Total Sugars and Added Sugars, and from the Added Sugars percentage Daily Value, declared on Nutrition and Supplement Facts labels. The guidance did not amend

§ 101.9, redefine Total Sugars, or rescind legally enforceable rights or responsibilities. See 21 C.F.R. § 10.115(d)(1).[21]

53. Defendant's small-print statements that FDA does not consider allulose a total or added sugar for nutrition labeling are therefore materially incomplete and misleading in context. They present a limited, nonbinding enforcement-discretion policy governing specified Nutrition and Supplement Facts declarations as a categorical statement of FDA classification. The FDA has not amended the binding chemical definition of Total Sugars and expressly stated that nutrient-content claims concerning sugars and added sugars would be addressed later. The Products' outside-panel amount and comparison claims remain subject to 21 C.F.R. § 101.13.[22]

54. The Seventh Circuit recently confirmed each of these points. In *Franco v. Chobani, LLC*, No. 25-2087, 184 F.4th 599 (7th Cir. 2026), the court reversed the dismissal of state consumer-protection claims challenging "Zero Sugar" yogurt sweetened with four grams of allulose per serving. The court held that because the definition in § 101.9(c)(6)(ii) "includes every monosaccharide and the following parenthetical is merely a list of examples, allulose is a sugar under § 101.9(c)(6)(ii)." *Id.* at *605. The FDA, appearing as amicus curiae at the court's invitation, "took the position that the text of § 101.9(c)(6)(ii) is unambiguous" and that Total Sugars as defined in that regulation include every monosaccharide, including allulose. *Id.*

55. The Seventh Circuit further held that the FDA's October 2020 Allulose Guidance does not alter that conclusion, because "[t]he Allulose Guidance isn't an interpretation of § 101.9(c)(6)(ii)"; rather, "it's an announcement of a change in enforcement policy." *Id.* at *4. Because the plaintiffs sought to hold the manufacturer liable under state law "for violating identical

---

[21] U.S. Food & Drug Administration, *The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry* 1, 8–9 (Oct. 2020), https://www.fda.gov/media/123342/download.

[22] U.S. Food & Drug Administration, *Sugars That Are Metabolized Differently Than Traditional Sugars*, 85 Fed. Reg. 66,335, 66,337 n.1 (Oct. 2020).

standards," their claims were not preempted. *Id.* at *5 (citing 21 U.S.C. § 343-1(a)(5)). The court also held that, "given the absolute promise on Chobani's products (sugar free)," the allegation that reasonable consumers were deceived was not implausible, *id.* at *5–6, and that "the fact that one sovereign (the United States) indicated that it would not enforce its labeling requirements with respect to allulose should not have led Chobani to believe that the states would take a similar approach," because "the FDA's decisions about its enforcement priorities would not immunize the company from suits based on state law." *Id.* at *5.

56. Each of those holdings applies with equal or greater force here. Like Chobani's yogurt, the Products make an absolute zero-sugar promise. Unlike Chobani's yogurt, which contained four grams of allulose per serving, the Products contain between 5 and 10 grams of allulose per labeled serving, and allulose is the first-listed component of the Products' second-listed ingredient, the "Sweetener Blend."

57. Because the Products' labels bear false or misleading outside-panel nutrient-content claims, the Products are "misbranded" under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. § 101.13(c), (i)(3), (j), and (o), applying the Total Sugars definition and zero threshold in § 101.9(c)(6)(ii), together with § 101.12(b); and, in the alternative, § 101.60(c)(1).

58. Plaintiffs do not seek to enforce the FDCA or its implementing regulations directly. Plaintiffs seek relief under independently enforceable state consumer-protection, warranty, and common-law causes of action. The FDCA's express preemption provision, 21 U.S.C. § 343-1(a), permits states to impose food-labeling requirements identical to the federal requirements, and Plaintiffs' state-law claims seek to impose requirements identical to those federal requirements. The federal provisions cited herein identify the standards that California has adopted as its own law and the conduct that renders the Products misbranded; Plaintiffs' claims are therefore not preempted.

E. **Defendant's Conduct Violates California's Food Labeling Laws**

59. Defendant's marketing, advertising, distribution, and sale of the Products violate the misbranding provisions of California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 *et seq.* (the "Sherman Law"), which adopts federal food-labeling regulations as California regulations. Cal. Health & Safety Code § 110100(a); see also *id.* § 110670.

60. Defendant's marketing, advertising, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, including:

(a) Section 110660 (a food is misbranded if its labeling is false or misleading in any particular);

(b) Section 110670 (a food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims set forth in 21 U.S.C. § 343(r));

(c) Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

(d) Section 110765 (making it unlawful for any person to misbrand any food); and

(e) Section 110770 (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

61. Defendant's marketing, advertising, distribution, and sale of the Products also violate the Sherman Law's false-advertising provisions, including:

(a) Section 109885, which defines "advertisement" to include representations on products and their packages, and Section 110390, which prohibits

dissemination of food advertisements that are false or misleading in any particular;

(b) Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food); and

(c) Sections 110398 and 110400 (making it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

62. Because the Products bear false or misleading outside-panel sugar claims, the Products are misbranded under California law, and Defendant's advertising, distribution, and sale of the Products are unlawful.

**F. <u>Reasonable Consumers Cannot Detect Defendant's Deception</u>**

63. Reasonable consumers have no reason to search the side or back panels when presented with the conspicuous front-panel representation that the Products contain "0g Total Sugars per Serving." Consumers are not expected to look beyond a misleading representation on the front of a package to discover that the representation is false. But even if they did, Defendant made it impossible for them to reconcile that impression by affirmatively representing that the "FDA does not consider allulose a total or added sugar for nutrition labeling." In other words, Defendant told consumers not to worry about allulose being a sugar before they even encountered it in the Nutrition Facts panel. And if they did, they would have seen 0g for total and added sugars, plus a disclosure stating that a number of ingredients, but not allulose, added "a trivial amount of sugar." Defendant then invited consumers to subtract the 5-10 grams of allulose to determine the Products' actual net carbs and again reminded them that the "FDA does not consider allulose a total or added sugar for nutrition labeling." For any remaining skeptics who are willing to read and reject those assurances, Defendant told them that "[a]llulose is a rare sugar found in raisins, figs, and maple syrup," which is nutritionally superior to "regular sugar" but is not, in fact, regular sugar

despite containing the same "familiar taste and texture." While contrasting allulose with cane sugar could be sensible, contrasting it with "regular sugar" makes consumers believe, again, that allulose is not actually a sugar — just the functional equivalent of one. That, again, is false and materially misleading.

64. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

65. Allulose is not a household name. In a 2021 consumer survey, only 15% of respondents had even heard of allulose, let alone understood that it is a sugar.[23] Nor do reasonable consumers ordinarily scrutinize back- or side-panel ingredient disclosures: observational studies have found that only approximately 7.7% to 11.6% of shoppers look at the side or back panels of a product before placing it in their cart,[24] and the average shopper spends roughly 13 seconds selecting an item in-store.[25] Reasonable consumers therefore cannot be expected to discern from the Products' ingredient disclosures that the Products contain sugar, particularly where those

---

[23] INTERNATIONAL FOOD INFORMATION COUNCIL, *Perceptions and Use of Dietary Sweeteners* (May 2021), https://foodinsight.org/wp-content/uploads/2021/05/IFIC-Sweeteners-Survey.May-2021.pdf.

[24] Klaus Grunert et al., *Nutrition Knowledge, and Use and Understanding of Nutrition Information on Food Labels Among Consumers in the UK*, 55 Appetite 177, 179–81 (2010) (in-store observational study finding that only 11.6% of shoppers who placed a product in their cart looked at its side or back panels); Klaus Grunert et al., *Use and Understanding of Nutrition Information on Food Labels in Six European Countries*, 18 J. Pub. Health 261, 263, 266 (2010) (62.6% of respondents looked at front packaging; only 7.7% looked elsewhere on the packaging); Yael Benn et al., *What Information Do Consumers Consider, and How Do They Look for It, When Shopping for Groceries Online?*, 89 Appetite 265, 270 (2015) (online eye-tracking study finding only 3.3% of fixations on ingredient information).

[25] Peter R. Dickson & Alan G. Sawyer, *The Price Knowledge and Search of Supermarket Shoppers*, 54 J. Marketing 42, 42–53 (1990).

disclosures are accompanied by Defendant's further assurance that "FDA does not consider allulose a total or added sugar for nutrition labeling."

### G. Defendant Knew the Zero Sugar Representations Were False

66. Defendant knew, or should have known, that the Zero Sugar Representations were false or misleading when it marketed, advertised, labeled, distributed, and sold the Products. Specifically, Defendant knew that: (a) the Products contain allulose; (b) allulose is a sugar, as its own statements that allulose is "a special type of sugar" or "a rare sugar" confirm; (c) the Products contain between 5 and 10 grams of allulose per labeled serving; (d) its labels nevertheless represent that the Products contain "0g" of sugar; (e) Defendant's Fruity Product marks six other ingredients as adding a trivial amount of sugar while omitting that notation for allulose; (f) reasonable consumers would rely on the Zero Sugar Representations when purchasing; (g) consumers would not receive the represented benefit of the bargain; and (h) the Zero Sugar Representations enabled Defendant to charge a premium for Products containing sugar.

67. Defendant could have stopped using the Zero Sugar Representations or ensured that they were true.

### H. Defendant's Zero Sugar Representations Injured Plaintiffs and the Classes

68. Defendant concealed or failed to disclose material facts about the Products, including: (a) the true nature of the Products' ingredients; (b) the fact that allulose is used as a bulk sweetener; (c) the fact that the Products contain between 5 and 10 grams of allulose per labeled serving—10 to 20 times the 0.5-gram cutoff; (d) the fact that the Products contain sugar despite the Zero Sugar Representations; and (e) the fact that the Products are misbranded under federal and California law when sold bearing the Zero Sugar Representations.

69. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiffs and the Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium price for

products that were not as represented; (c) were deprived of the benefit of the bargain because the Products they purchased differed from what Defendant warranted; (d) purchased Products worth less than represented; (e) did not receive products that met the expectations Defendant created; (f) purchased Products they did not expect or consent to receive; (g) purchased Products containing sugar despite intending to buy products represented to contain none; and (h) with respect to Plaintiffs Mirzaian and Kazemi and members of the California Subclass, purchased misbranded Products that could not lawfully have been sold in California.

70. Accordingly, Plaintiffs and the Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

### I. **Plaintiffs Lack an Adequate Remedy at Law**

71. Plaintiffs lack an adequate remedy at law for the future harm described above. Damages cannot remedy Plaintiffs' inability to rely on Defendant's representations when deciding whether to purchase the Products in the future. Only injunctive relief requiring Defendant to cease or correct the misleading Zero Sugar Representations can address that prospective harm.

72. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices Plaintiffs and Class Members paid and the value of the Products as received, which may not be coextensive with damages.

73. Equitable relief is additionally appropriate because the statutes of limitations for the asserted causes of action vary. The UCL carries a four-year limitations period, and the FAL carries a three-year limitations period, which may reach purchases not fully remediable under other causes of action.

74. The scope of actionable misconduct under the FAL and UCL is also broader than under the other causes of action asserted herein. The FAL and UCL prohibit Defendant's fraudulent marketing scheme. Plaintiffs' warranty and common-law claims are more limited,

focusing on duties arising from Defendant's representations at the point of purchase. The UCL may also borrow statutory prohibitions that do not themselves create a private cause of action.

**J. The Products Are Substantially Similar**

75. Plaintiffs each purchased Defendant's Fruity cereal. The remaining Products are substantially similar to the Fruity cereal in every respect material to Plaintiffs' claims:

(a) **Defendant.** All Products are formulated, manufactured, labeled, packaged, marketed, advertised, and sold by Defendant.

(b) **Brand and trade dress.** All Products are sold under the Magic Spoon brand name in materially identical packaging and trade dress.

(c) **Purpose and use.** All Products are ready-to-eat breakfast cereals marketed directly to consumers for personal consumption and prepared and consumed in the same manner.

(d) **Representations.** All Products bear the same "0g TOTAL SUGARS PER SERVING" claim on the front panel, the same "0g" sugar comparison panel on the back, and the same small-print statement that "FDA does not consider allulose a total or added sugar for nutrition labeling."

(e) **Key ingredient.** All Products are sweetened with allulose, a sugar, as the first-listed component of the "Sweetener Blend," and each contains between 5 and 10 grams of allulose per labeled serving.

(f) **Misleading effect.** The misleading effect of the Zero Sugar Representations is the same for every Product: consumers pay a premium for a cereal represented to contain no sugar and receive a cereal sweetened predominantly with allulose, a sugar.

## CLASS ACTION ALLEGATIONS

76. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3). The proposed classes are defined below (collectively, the "Classes"):

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.
>
> **California Subclass:** All persons in the State of California who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.
>
> **Illinois Subclass:** All persons in the State of Illinois who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.
>
> **New York Subclass:** All persons in the State of New York who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.

77. The Classes do not include: (1) Defendant or its officers or directors; (2) the Judge or Magistrate Judge assigned to this action; (3) the assigned Judge's or Magistrate Judge's staff and family; or (4) Plaintiffs' counsel or Defendant's counsel.

78. Plaintiffs reserve the right to amend the class definitions and add classes or subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

79. **Community of Interest:** There is a well-defined community of interest among members of the Classes, and the disposition of their claims in a single action will provide substantial benefits to all parties and to the Court.

80. **Numerosity:** While the exact number of members of the Classes is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number at least in the thousands. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

81. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes. These common legal and factual questions include, but are not limited to:

(a) Whether allulose is a sugar;

(b) Whether Defendant's Zero Sugar Representations were false or misleading;

(c) Whether reasonable consumers would understand Defendant's representations and warranties concerning the Products to be untrue and misleading;

(d) Whether Defendant's representations and warranties were material;

(e) Whether the Products are misbranded under federal law and, with respect to the California, Illinois, and New York Subclasses, under California, Illinois, and New York law, respectively;

(f) Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

(g) Whether Plaintiffs and the members of the Classes have suffered damages as a result of Defendant's actions and the amount of those damages;

(h) Whether Plaintiffs and the members of the Classes are entitled to statutory damages; and

(i) Whether Plaintiffs and the members of the Classes are entitled to attorneys' fees and costs.

82. With respect to the California Subclass, additional questions of law and fact common to the members include whether Defendant violated California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*., California's False Advertising Law

("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq*., and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.

83. **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Classes because Plaintiffs were exposed to Defendant's Zero Sugar Representations, reasonably relied on those representations, and suffered the same type of economic loss alleged for Class Members who purchased the Products.

84. **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives because they have no interests adverse to those of the Classes, are committed to the vigorous prosecution of this action, and have retained skilled and experienced counsel.

85. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual litigation make it economically unfeasible for members of the Classes to seek redress outside a class action. Even if Class Members could afford individual litigation, the resulting burden on the courts would be substantial. Individualized litigation would also create a risk of varying, inconsistent, or contradictory judgments and would magnify delay and expense by requiring multiple trials of the same factual issues. By contrast, maintaining this action as a class action with respect to some or all issues presents fewer management difficulties, conserves the resources of the parties and courts, and protects each Class Member's rights. Plaintiffs anticipate no difficulty in managing this action as a class action. Classwide relief is essential to compel compliance with applicable consumer-protection laws. Separate actions could also subject Defendant to inconsistent obligations.

86. **Injunctive and Declaratory Relief:** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the Classes, thereby making appropriate final injunctive and declaratory relief with respect to the Classes as a whole under Federal Rule of Civil

Procedure 23(b)(2). Unless a classwide injunction is issued, Defendant will continue to label, advertise, market, and sell the Products in an unlawful and misleading manner, and members of the Classes will continue to be misled and harmed.

87. **Risk of Inconsistent Adjudications:** Prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant, warranting certification under Federal Rule of Civil Procedure 23(b)(1).

## CAUSES OF ACTION

### COUNT I
### Violation of California's Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code § 1750 *et seq.*
### (On Behalf of Plaintiffs Mirzaian, Kazemi, and the California Subclass)

88. Plaintiffs Mirzaian and Kazemi incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

89. Plaintiffs bring this claim on behalf of themselves and the California Subclass against Defendant.

90. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have."

91. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

92. Civil Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

93. Defendant profited from sales of the falsely and deceptively advertised Products by representing that the Products contain "0g Sugar" even though they contain between 5 and 10 grams of allulose per labeled serving—10 to 20 times the 0.5-gram cutoff.

94. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

95. On August 14, 2026, counsel for Plaintiff Mirzaian mailed a pre-suit notice letter pursuant to Cal. Civ. Code § 1782 via certified mail, return receipt requested, to Defendant. On August 31, 2026, counsel for Plaintiff Kazemi mailed a pre-suit notice letter pursuant to Cal. Civ. Code § 1782. The letters provided notice of the alleged CLRA violations and other consumer-protection violations on behalf of the Class Members and demanded that Defendant correct the unlawful, unfair, false, and deceptive practices alleged herein. More than 30 days have elapsed since Defendant received each letter.

96. Plaintiffs and the California Subclass Members seek (1) actual damages; (2) restitution; (3) reasonable costs and attorneys' fees; and (4) an order enjoining the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

## COUNT II
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 *et seq.***
**(On Behalf of Plaintiffs Mirzaian, Kazemi, and the California Subclass)**

97. Plaintiffs hereby incorporate by reference and re-allege the allegations contained in all preceding paragraphs of this Complaint.

98. Plaintiffs bring this claim individually and on behalf of the California Subclass against Defendant.

99. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unfair, fraudulent, and unlawful business practices.

100. Plaintiffs have standing to pursue this claim because they suffered an injury in fact and lost money or property as a result of Defendant's conduct. Plaintiffs purchased Defendant's Products for personal use, relied on Defendant's representation that the Products contained "0g TOTAL SUGARS PER SERVING," and spent money they otherwise would not have spent had they known the Products contained between 5 and 10 grams of allulose per serving.

101. The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of themselves and others similarly situated who are affected by the unlawful or unfair business practice or act.

102. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code § 17200 *et seq*.

103. Defendant violated the UCL's proscription against engaging in **Unlawful Business** Practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq*.; the CLRA, Cal. Civ. Code § 1770 *et seq*.; the Sherman Law, including, without limitation, Cal. Health & Safety Code §§ 110100, 110390, 110395, 110398, 110400, 110660, 110670, 110760, 110765, and 110770; and the federal food-labeling requirements adopted by the Sherman Law, including 21 U.S.C. § 343(a)(1) and (r)(1)(A) and 21 C.F.R. § 101.13(c), (i)(3), (j), and (o), applying the Total Sugars definition and zero threshold in § 101.9(c)(6)(ii), together with § 101.12(b).

104. Defendant has also violated the UCL's proscription against engaging in **Unfair Business Practices.** Defendant's acts, omissions, misrepresentations, practices, and

nondisclosures as alleged herein also constitute unfair business acts and practices within the meaning of Business & Professions Code § 17200 *et seq*. Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity of Defendant's conduct outweighs any alleged benefits attributable to it. There is no utility in representing that cereals containing between 5 and 10 grams of allulose per labeled serving contain "0g Sugar." Furthermore, Defendant's false and misleading representations are detrimental to competitors offering breakfast cereals that either do not make similar claims or do not contradict those claims by sweetening their products with sugar. Defendant's misrepresentations and omissions therefore harm consumers and the market as a whole.

105. Defendant has also violated the UCL's proscription against engaging in **Fraudulent Business Practices**. A business act or practice is "fraudulent" under the UCL if members of the public are likely to be deceived. The Zero Sugar Representations were and are likely to deceive reasonable consumers into believing that the Products contain no sugar when, in fact, they contain between 5 and 10 grams of allulose, a sugar, per labeled serving. Plaintiffs Mirzaian and Kazemi and California Subclass Members were in fact deceived.

106. Plaintiffs and the California Subclass Members suffered substantial injury by buying Products they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the presence and amount of sugar in the Products.

107. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefor, particularly considering the available legal alternatives in the marketplace. Such conduct is immoral, unethical, or unscrupulous; it offends established public policy and is substantially injurious to Plaintiffs and the California Subclass Members.

108. Plaintiffs and the California Subclass Members could not reasonably have avoided their injury or known that the Products' prominent labeling and marketing were inaccurate. Consumers lack the specialized knowledge to determine whether an ingredient such as allulose is a sugar. Defendant's front-panel disclaimer framed the omission as an FDA nutrition-labeling convention, while the side panels disclosed label-stated allulose amounts. Those qualified and contradictory disclosures did not enable reasonable consumers to avoid the injury.

109. Pursuant to California Business and Professions Code § 17203, Plaintiffs Mirzaian and Kazemi and the California Subclass Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT III**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 *et seq.***
**(On Behalf of Plaintiffs Mirzaian, Kazemi, and the California Subclass)**

110. Plaintiffs hereby incorporate the foregoing allegations as if fully set forth herein.

111. Plaintiffs bring this claim on behalf of themselves and the California Subclass against Defendant.

112. Defendant's acts and practices, as described herein, have deceived or are likely to deceive members of the California Subclass and the public. Defendant represents that the Products contain "0g Sugar" even though they contain between 5 and 10 grams of allulose per labeled serving—10 to 20 times the 0.5-gram cutoff.

113. Defendant has disseminated uniform advertising regarding the Products throughout California and the United States. The advertising was unfair, deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500 and was intended and likely to deceive consumers.

114. Defendant's above-described advertising is likely to deceive because Defendant affirmatively represents that the Products contain "0g TOTAL SUGARS PER SERVING" and "0g Sugar."

115. In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue or misleading. Plaintiffs Mirzaian, Kazemi, and the California Subclass based their purchasing decisions on Defendant's materially false Zero Sugar Representations and were injured in fact and lost money or property as a result.

116. Defendant's misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 *et seq*.

117. Plaintiffs Mirzaian, Kazemi, and the California Subclass Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT IV**
**Violation of Illinois' Consumer Fraud and Deceptive Business Practices Act**
**815 Ill. Comp. Stat. 505/1 *et seq.***
**(On Behalf of Plaintiff Freifeld and the Illinois Subclass)**

118. Plaintiff Freifeld hereby incorporates the foregoing paragraphs as if fully set forth herein.

119. Plaintiff Freifeld brings this claim on behalf of himself and the Illinois Subclass against Defendant.

120. Plaintiff and the Illinois Subclass Members, and Defendant, are "persons" within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). 815 Ill. Comp. Stat. 505/1(c).

121. Defendant engages in "trade" or "commerce" in Illinois as defined by 815 Ill. Comp. Stat. 505/1(f).

122. The Products are "merchandise" as defined by 815 Ill. Comp. Stat. 505/1(b).

123. Plaintiff's purchase of the Products was a "sale" under 815 Ill. Comp. Stat. 505/1(d).

124. ICFA declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false

pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact[.]" 815 Ill. Comp. Stat. 505/2.

125. Defendant's misrepresentations and other deceptive conduct, including the misrepresentations and other deceptive conduct described herein, constitute a violation of the ICFA.

126. Defendant engaged in deceptive acts or practices in violation of the ICFA by knowingly concealing, omitting, or failing to disclose the Products' sugar content, including through the misrepresentations and other deceptive conduct as described herein.

127. Defendant knew that the Products contained allulose, a sugar, despite presenting that they had "0g Total Sugars."

128. Defendant intended that Plaintiff and the Illinois Subclass would rely on the overall impression of the packaging, along with the misrepresentations and other deceptive conduct described herein regarding the Products' sugar content, when deciding to purchase the Products, unaware that the Products contained allulose, a sugar.

129. Defendant's misrepresentations and other deceptive conduct, including the misrepresentations and other deceptive conduct described herein, occurred before Plaintiff and the Illinois Subclass decided to purchase the Products.

130. Plaintiff and the Illinois Subclass relied on, and were in fact deceived by, the overall impression of the packaging, along with the misrepresentations and other deceptive conduct, including the misrepresentations and other deceptive conduct described herein, with respect to the Products' sugar content.

131. The facts misrepresented, concealed, and/or not disclosed by Defendant were material facts in that Plaintiff, the Illinois Subclass, and other reasonable consumers would have considered them in deciding whether to purchase the Products.

132. For example, a reasonable consumer, such as Plaintiff, would want to know that food items, such as the Products, that were advertised as containing "0g Total Sugars," included allulose, a sugar.

133. Had Plaintiff and the Illinois Subclass known the Products contained sugar, they would not have purchased the Products or paid the premium price.

134. A significant portion of the general consuming public or of Defendant's targeted consumers, acting reasonably in the circumstances, could be misled or deceived by Defendant's misrepresentations and other deceptive conduct as described herein.

135. Defendant's misrepresentations and other deceptive acts or practices caused Plaintiff and the Illinois Subclass to suffer injury in the form of actual damages when they purchased the Products that were worth less than the price they paid and that they would not have purchased had they known the Products contained allulose, a sugar.

136. As a direct and proximate result of Defendant's deceptive, misleading, unfair, and unconscionable practices as set forth above, Plaintiff and the Illinois Subclass are entitled to actual damages, compensatory damages, injunctive relief, attorneys' fees, and costs, as set forth in Section 10a of the ICFA.

137. Plaintiff is entitled to pursue a claim on behalf of the Illinois Subclass against Defendant for actual damages, punitive damages, injunctive relief, other equitable relief, and attorneys' fees and costs to remedy Defendant's violations of the ICFA pursuant to 815 Ill. Comp. Stat. 505/10a.

138. Plaintiff therefore seeks actual and punitive damages, declaratory and injunctive relief, and attorneys' fees and costs.

**COUNT V**
**Violation of New York Gen. Bus. Law § 349**
**(On Behalf of Plaintiffs, the Nationwide Class and the New York Subclass)**

139. Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth herein.

140. Plaintiffs bring this claim on behalf of themselves, the Nationwide Class, and the New York Subclass against Defendant.

141. N.Y. GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

142. New York law applies to Plaintiffs, the Nationwide Class, and the New York Subclass Members because Defendant is headquartered in New York, its key executives and employees are in New York, the State of New York has a strong interest in regulating businesses in New York to prevent them from engaging in false advertising and deceptive business practices, and the false and misleading representations emanated from New York.

143. Any person who has been injured by reason of any violation of N.Y. GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section. The court may award reasonable attorneys' fees to a prevailing plaintiff.

144. The practices employed by Defendant, by which it labels and markets the Products, are materially misleading and deceptive within the meaning of N.Y. GBL § 349.

145. Defendant's acts and practices deceived Plaintiffs and the New York Subclass Members. Plaintiffs and New York Subclass Members reasonably relied on these representations and believed they were purchasing products free from sugars.

146. Plaintiffs and Class Members did not receive the benefit of their bargain. They paid a price premium for products that were falsely marketed.

147. Defendant disseminated these false and misleading statements throughout New York, which were known, or should have been known through reasonable care, to be untrue and misleading to consumers, including Plaintiffs and the Class Members.

148. Plaintiffs and the Class Members have been injured by Defendant's deceptive acts or practice, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

149. Plaintiffs and the Class Members have no adequate remedy at law.

150. Defendant's conduct has caused and continues to cause immediate and irreparable injury to Plaintiffs and the Class Members and will continue to mislead consumers unless enjoined by this Court.

151. On behalf of themselves and the New York Subclass, Plaintiffs seek to recover their actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT VI**
**Violation of New York Gen. Bus. Law § 350**
**(On Behalf of Plaintiffs, the Nationwide Class and the New York Subclass)**

152. Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth herein.

153. Plaintiffs bring this claim on behalf of themselves, the Nationwide Class and the New York Subclass against Defendant.

154. This claim is brought pursuant to the laws of the State of New York.

155. By reason of the acts set forth above, Defendant has been and is engaged in consumer-oriented advertising and marketing directed at Plaintiffs and the Class Members by engaging in business conduct that is false and misleading in material respects, in violation of N.Y. GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

156. Defendant caused statements that were untrue or misleading, and which it knew to be untrue or misleading, to be disseminated from New York State, through labeling, marketing, or other publications.

157. New York law applies to Plaintiffs, the Nationwide Class, and the New York Subclass Members because Defendant is headquartered in New York, its key executives and employees are in New York, the State of New York has a strong interest in regulating businesses in New York to prevent them from engaging in false advertising and deceptive business practices, and the false and misleading representations emanated from New York.

158. Defendant's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Defendant's material misrepresentations.

159. Plaintiffs and the Class Members have been injured by Defendant's deceptive acts or practices.

160. Plaintiffs and the Class Members have no adequate remedy at law.

161. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiffs and the Class Members and will continue to damage both Plaintiffs and the Class Members and deceive the public unless enjoined by this Court.

162. Pursuant to N.Y. GBL § 350-e, Plaintiffs and the Class Members seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to N.Y. GBL § 350-e(3)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

163. Defendant's conduct has also substantially injured the public, as consumers were exposed to and relied upon Defendant's false labeling and marketing in deciding to purchase the Products.

164. Defendant's conduct thus caused real-world harm and poses an ongoing risk of further injury if not enjoined.

**COUNT VII**
**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Nationwide Class)**

165. Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth herein.

166. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against Defendant under various state laws.[26]

167. Defendant's express warranties formed part of the basis of the bargain when Plaintiffs and members of the Nationwide Class purchased the Products.

168. The warranties include the promises and affirmations of fact Defendant made on the Products' packaging and in its marketing that the Products contain "0g TOTAL SUGARS PER SERVING" and "0g Sugar."

169. This labeling and advertising constitute express warranties and became part of the basis of the bargain for Plaintiffs and members of the Nationwide Class when they purchased the Products.

170. As set forth above, Defendant purports through its labeling, marketing, and packaging to warrant that the Products contain "0g Sugar." Defendant breached its express

[26] While discovery may alter the following, Plaintiffs assert that the states with similar express warranty laws under the facts of this case include, but are not limited to: Alaska Stat. § 45.02.313; A.R.S. § 47-2313; Ark. Code § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; 6 Del. C. § 2-313; D.C. Code § 28:2-313; Ga. Code § 11-2-313; HRS § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. 5/2-313; Ind. Code § 26-1-2-313; K.S.A. § 84-2-313; KRS § 355.2-313; 11 M.R.S. § 2-313; Mass. Gen. Laws Ann. ch. 106 § 2-313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; R.S. Mo. § 400.2-313; Mont. Code Ann. § 30-2-313; Neb. U.C.C. § 2-313; Nev. Rev. Stat. Ann. § 104.2313; RSA 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; ORC Ann. § 1302.26; 12A Okl. St. § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code § 2.313; Utah Code Ann. § 70A-2-313; 9A V.S.A. § 2-313; Va. Code § 8.2-313; Wash. Rev. Code Ann. § 62A.2-313; W. Va. Code § 46-2-313; and Wyo. Stat. Ann. § 34.1-2-313.

warranties by selling Products that each contain between 5 and 10 grams of allulose per labeled serving. The Products do not conform to Defendant's Zero Sugar Representations and warranties.

171. Plaintiffs and members of the Nationwide Class reasonably relied on the foregoing express warranties, believing that the Products in fact conformed to them.

172. Plaintiffs provided Defendant with timely notice of the breach, including through the written pre-suit notice letters sent on behalf of Plaintiffs Mirzaian and Kazemi on August 14, 2026 and August 31, 2026, which identified the challenged representations and demanded that Defendant correct them. Defendant did not cure. Defendant also had actual knowledge of the nonconformity at all relevant times because it formulated the Products with between 5 and 10 grams of allulose per labeled serving while labeling them "0g TOTAL SUGARS PER SERVING." Plaintiffs and members of the Nationwide Class satisfied, or were excused from, any other applicable conditions precedent.

173. Plaintiffs and the members of the Nationwide Class would not have purchased the Products had they known the Products' true nature.

174. As a result, Defendant breached the express warranties made to Plaintiffs and the Nationwide Class. Plaintiffs and all members of the Nationwide Class suffered financial injury and are entitled to relief allowed by law.

## COUNT VIII
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

175. Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth herein.

176. Plaintiffs bring this claim individually and on behalf of the Nationwide Class against Defendant under New York law or, in the alternative, under the substantially similar laws of the states applicable to members of the Nationwide Class.

177. To the extent required, Plaintiffs assert this cause of action in the alternative to their legal claims, as permitted by Federal Rule of Civil Procedure 8.

178. Defendant's false and misleading Zero Sugar Representations caused Plaintiffs and Class Members to pay a price premium for the Products.

179. Defendant thereby received a direct and unjust benefit at the expense of Plaintiffs and Class Members.

180. Plaintiffs and Class Members seek the return of that unjust benefit.

**COUNT IX**
**Common Law Fraud**
**(On Behalf of Plaintiffs and the Nationwide Class)**

181. Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth herein.

182. Plaintiffs bring this claim on behalf of themselves and members of the Nationwide Class against Defendant for common law fraud.

183. Plaintiffs bring this claim under the laws of the State of New York.

184. Defendant has willfully, falsely, and knowingly misrepresented the Products through the Products' Zero Sugar Representations, as it knew that the Products were not free of sugar.

185. Defendant has therefore made knowing, fraudulent misrepresentations as to the Products.

186. Defendant's misrepresentations were material (i.e., they affected Plaintiffs' and Class Members' purchasing decisions given their importance), and were central to the Products' functionality because the Products are advertised as free of sugar, but in fact contain sugar in the form of allulose.

187. Defendant knew or recklessly disregarded the fact that the Products' Zero Sugar Representations were false and deceptive.

188. Defendant intended that Plaintiffs and members of the Classes rely on the Products' advertising, because, if they had known the truth that the Products' Zero Sugar Representations

were false and misleading, they would have paid less for the Products or would not have purchased them at all.

189. Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products, and if Plaintiffs and members of the Classes had known the truth about the Products, they would not have paid monies for the Products or would have paid less monies for the Products.

190. For these reasons, Plaintiffs and members of the Classes have suffered monetary losses, including interest they would have accrued on these monies, as a direct and proximate result of Defendant's fraudulent conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant as follows:

a) For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiffs as representatives of the Classes, and Plaintiffs' Counsel as Class Counsel;

b) For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c) For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d) For an award of actual, compensatory, statutory, treble, and punitive damages to the extent permitted by applicable law;

e) For prejudgment interest on all amounts awarded;

f) For restitution to the extent permitted by applicable law;

g) For injunctive relief as pleaded or as the Court may deem proper, including an order requiring Defendant to cease labeling, marketing, and selling the

Products with the Zero Sugar Representations and to make affirmative disclosures sufficient to dispel the public misperception created by Defendant's conduct;

h) For an order awarding Plaintiffs' and the Classes' reasonable attorneys' fees, expenses, and costs of suit; and

i) For such other and further relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: October 22, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**
*/s/ L. Timothy Fisher*
L. Timothy Fisher (*pro hac vice*)
Joshua B. Glatt (*pro hac vice*)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jglatt@bursor.com

**GUCOVSCHI LAW FIRM, PLLC**
Adrian Gucovschi, Esq.
165 Broadway, Fl. 23
New York, NY 10006
Telephone: (212) 884-4230
Email: adrian@gucovschilaw.com

Andrew Shamis (NY Bar No. 5195185)
Katherine Phillips**
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave., Suite 705
Miami, FL 33132
Telephone: (305) 479-2299
ashamis@shamisgentile.com
kphillips@shamisgentile.com

Gabriel Mandler**
Scott A. Edelsberg**
**EDELSBERG LAW, P.A.**
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320
gabriel@edelsberglaw.com
scott@edelsberglaw.com

Raphael Janove
**JANOVE PLLC**
115 Broadway 5th Fl.
New York, NY 10006
(646) 347-3940
raphael@janove.law

Valter Malkhasyan, Esq.**
Erik Pogosyan, Esq.**
**MALK & POGO LAW GROUP, LLP**
5320 Laurel Canyon Blvd
Valley Village, CA 91607
(818) 484-5204
valter@malkpogolaw.com

*Counsel for Plaintiffs and the Classes*

** *pro hac vice application forthcoming*